**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION**

| | |
|---|---|
| **ELISABETH MITTER, individually, as parent of B.K., a minor, and as Administratrix of the Estate of JOHN EVERETT KING III, deceased**<br>1437 Northgate Square, Unit 21<br>Reston, Virginia 20190<br><br>*Plaintiff,*<br><br>v.<br><br>**CHRISTOPHER ALLEN GLOVER**<br>742 New Centreville<br>Somerset, Pennsylvania 15501<br><br>    **SERVE:**<br>        Michael F. Nerone, Esq.<br>        Pion, Nerone, Girman,<br>        Winslow & Smith, PC<br>        420 Ft. Duquesne Blvd.,<br>        One Gateway Center, Suite 1500<br>        Pittsburgh, Pennsylvania 15222<br>*-and-*<br><br>**TRIPLE C TRANSPORTATION LIMITED LIABILITY COMPANY d/b/a TRIPLE C TRANSPORTATION LLC**<br>209 Morocco Street<br>Somerset, Pennsylvania 15501<br><br>    **SERVE:**<br>        Michael F. Nerone, Esq.<br>        Pion, Nerone, Girman,<br>        Winslow & Smith, PC<br>        420 Ft. Duquesne Blvd.,<br>        One Gateway Center, Suite 1500<br>        Pittsburgh, Pennsylvania 15222<br><br>*-and-*<br><br>**SCOTT WAGNER TRUCKING, INC. d/b/a S. WAGNER TRUCKING, INC.** | ELECTRONICALLY FILED<br>Jan 26 2021<br>U.S. DISTRICT COURT<br>Northern District of WV<br><br>Case No:   **3:21-CV-13 (Groh)**<br>          _____ |

RD#1 BOX 160         )
TYRONE, Pennsylvania 16686   )
               )
   **SERVE:**        )
     Michael F. Nerone, Esq.  )
     Pion, Nerone, Girman,   )
     Winslow & Smith, PC   )
     420 Ft. Duquesne Blvd.,  )
     One Gateway Center, Suite 1500 )
     Pittsburgh, Pennsylvania 15222 )
               )
*-and-*           )
               )
**LESTER E. SPECHT a/k/a**   )
**LESTER SPECHT**      )
301 Mt. View Road      )
Friedens, Pennsylvania 15541   )
               )
*-and-*           )
               )
**E.K. BARE & SONS, INC.**   )
252 Maple Avenue      )
Bird-in-Hand, Pennsylvania 17505  )
               )
   **SERVE:**        )
     Ragen Horst     )
     252 Maple Ave    )
     Bird-in-Hand, Pennsylvania 17505 )
               )
*-and-*           )
               )
**ROBERT HORST**      )
252 Maple Avenue      )
Bird-in-Hand, Pennsylvania 17505  )
               )
*-and-*           )
               )
**RAGEN HORST**      )
252 Maple Avenue      )
Bird-in-Hand, Pennsylvania 17505  )
               )
*-and-*           )
               )
**BRADLEY HALLADAY**    )
252 Maple Avenue      )
Bird-in-Hand, Pennsylvania 17505  )

```
                                                    )
-and-                                               )
                                                    )
LINDA GOOD                                          )
252 Maple Avenue                                    )
Bird-in-Hand, Pennsylvania 17505                    )
                                                    )
Defendants.                                         )
```

## COMPLAINT AND JURY DEMAND

COMES NOW, Elisabeth Mitter ("Ms. Mitter," "Plaintiff"), individually, as parent of

B.K., a minor, and as Administratrix of the Estate of John Everett King III ("Mr. King"),

deceased, by and through the undersigned counsel, and files this Complaint and Jury Demand

against the above-named Defendants based on the following:

## OVERVIEW

In May 2019, E.K. Bare & Sons, Inc. ("E.K. Bare"), a broker of chipping potatoes

used for making potato chips – including both the procurement of the commodities and the

logistics of transporting such loads – arranged for Lester E. Specht *a/k/a* Lester Specht

("Specht") to transport a load of bulk chipping potatoes (the "Load") grown at John M. Seay

Farms in Bunnel, Florida, to Utz Quality Foods, LLC, in Hanover, Pennsylvania. Specht further

arranged with Scott Wagner Trucking, Inc., *d/b/a* S. Wagner Trucking, Inc. ("Wagner"), to

consummate delivery of the Load. Wagner then directed TRIPLE C TRANSPORTATION

Limited Liability Company *d/b/a* Triple C Transportation LLC ("Triple C") to deliver the Load,

pursuant to a lease agreement between the two wherein Triple C delivered shipments tendered to

it by Wagner under the auspices of Wagner.

On May 11, 2019, Triple C's driver, Christopher Allen Glover ("Glover"), driving a 2000

Western Star tractor-trailer, picked up the Load in Bunnel, Florida. While transporting the Load,

Glover crashed the tractor-trailer violently into the rear of Plaintiff's Toyota Camry which was lawfully traveling northbound on Route 340 and stopped behind a line of vehicles at a red light at the intersection of Route 340 and Augustine Avenue in Jefferson County, West Virginia, resulting in a horrific and catastrophic multi-vehicle collision. The Camry contained Ms. Mitter, Mr. King, and their infant son, B.K. Ms. Mitter suffered severe physical injuries, including, but not limited to, crush injuries to her left arm, requiring multiple surgeries, as well as severe emotional anguish. Ms. Mitter was only twenty-nine years old. To this day, Ms. Mitter has very limited use of her left arm and remains in treatment for her injuries.

B.K. also suffered severe physical injuries, including, but not limited to, a fractured skull and bleeding in his brain. B.K. was only two months old. B.K.'s development has been delayed due to the crash.

Mr. King, Ms. Mitter's fiancé and the father of B.K., tragically died in the collision, after consciously suffering for an extended period of time. He was only thirty-two years old.

Below is a photo of Plaintiff's vehicle at the crash scene.



Below is an aerial view of the crash scene, showing Plaintiff's vehicle in the marked oval:



## <u>JURISDICTION, VENUE, AND PARTIES</u>

1.     This Court has subject matter jurisdiction over the claims herein under 28 U.S.C. § 1331 because this civil action arises under the laws of the United States, namely, 49 U.S.C. § 14916. This Court has subject matter over state-law claims brought herein under 28 U.S.C. § 1367(a) because such claims form part of the same case or controversy as those arising under the laws of the United States. Independent of 28 U.S.C. §§ 1331 and 1367(a), this Court has subject matter jurisdiction over Plaintiff's claims and causes of action pursuant to 28 U.S.C. § 1332(a): this is an action for damages involving a matter in controversy in excess of $75,000.00, exclusive of costs and interest and each Defendant is a citizen of a different state than Plaintiff, B.K., and her decedent.

2.     Pursuant to 28 U.S.C. § 1391, venue is properly conferred on this Court because the collision that forms the basis of this action took place in Jefferson County, West Virginia.

3.      Ms. Mitter and her son, B.K., are citizens and residents of the Commonwealth of Virginia, residing at 1437 Northgate Square, Unit 21, Reston, Virginia 20190.

4.      At all times relevant to this Complaint, thirty-two-year-old decedent Mr. King was a resident of the Commonwealth of Virginia, residing at 1437 Northgate Square, Unit 21, Reston, Virginia 20190. On or about June 10, 2019, Ms. Elisabeth Mitter was duly qualified and appointed in West Virginia as the Administratrix of the Estate of John Everett King III (*see* Letter of Administration, attached as Exhibit 1). Additionally, on July 11, 2019, Ms. Mitter was duly qualified and appointed in the Commonwealth of Virginia, as the Administrator of the estate of John Everett King III.

5.      Defendant Christopher Allen Glover ("Glover") is a citizen of the Commonwealth of Pennsylvania, with a last known address of 742 New Centerville, Somerset, Pennsylvania 15501.

6.      Once served, Defendant Glover is subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of one or more of the following acts: his transacting any business in West Virginia, his contracting to supply services or things in West Virginia, and/or his causing tortious injury by an act or omission in West Virginia.

7.      Defendant E.K. Bare & Sons, Inc. ("E.K. Bare"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 252 Maple Avenue, Bird-in-Hand, Pennsylvania 17505.

8.      Once served, Defendant E.K Bare is subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of one or more of the following acts: its transacting any business in the state of West Virginia, its

contracting to supply services or things in the state of West Virginia, its causing tortious injury by an act or omission in the state of West Virginia, and/or its regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from services rendered in the state of West Virginia and causing tortious injury in the state of West Virginia by an act or omission outside of the state of West Virginia. Defendant E.K Bare is further subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 31D-15-1501(d) in that it made a contract to be performed, in whole or in part, by any party thereto in the state of West Virginia, and/or in that it committed a tort, in whole or in part, in the state of West Virginia.

9.     At all relevant times, Defendant Robert Horst was an officer, director, and/or principal of E.K. Bare and Sons, Inc., and is a citizen of the Commonwealth of Pennsylvania, with a business address located at 252 Maple Avenue, Bird-in-Hand, Pennsylvania 17505.

10.    Once served, Defendant Robert Horst is subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of one or more of the following acts: his transacting any business in the state of West Virginia, his contracting to supply services or things in the state of West Virginia, his causing tortious injury by an act or omission in the state of West Virginia, and/or his regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from services rendered in the state of West Virginia and causing tortious injury in the state of West Virginia by an act or omission outside of the state of West Virginia.

11.    At all relevant times, Defendant Ragen Horst was an officer, director, and/or principal of E.K. Bare and Sons, Inc., and is a citizen of the Commonwealth of Pennsylvania, with a business address located at 252 Maple Avenue, Bird-in-Hand, Pennsylvania 17505.

12.     Once served, Defendant Ragen Horst is subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of one or more of the following acts: his transacting any business in the state of West Virginia, his contracting to supply services or things in the state of West Virginia, his causing tortious injury by an act or omission in the state of West Virginia, and/or his regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from services rendered in the state of West Virginia and causing tortious injury in the state of West Virginia by an act or omission outside of the state of West Virginia.

13.     At all relevant times, Defendant Bradley Halladay was an officer, director, and/or principal of E.K. Bare and Sons, Inc., and is a citizen of the Commonwealth of Pennsylvania, with a business address located at 252 Maple Avenue, Bird-in-Hand, Pennsylvania 17505.

14.     Once served, Defendant Bradley Halladay is subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of one or more of the following acts: his transacting any business in the state of West Virginia, his contracting to supply services or things in the state of West Virginia, his causing tortious injury by an act or omission in the state of West Virginia, and/or his regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from services rendered in the state of West Virginia and causing tortious injury in the state of West Virginia by an act or omission outside of the state of West Virginia.

15.     At all relevant times, Defendant Linda Good was an officer, director, and/or principal of E.K. Bare and Sons, Inc., and is a citizen of the Commonwealth of Pennsylvania, with a business address located at 252 Maple Avenue, Bird-in-Hand, Pennsylvania 17505.

16.    Once served, Defendant Linda Good is subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of one or more of the following acts: her transacting any business in the state of West Virginia, her contracting to supply services or things in the state of West Virginia, her causing tortious injury by an act or omission in the state of West Virginia, and/or her regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from services rendered in the state of West Virginia and causing tortious injury in the state of West Virginia by an act or omission outside of the state of West Virginia.

17.    Defendant Lester E. Specht *a/k/a* Lester Specht ("Specht") is a citizen of the Commonwealth of Pennsylvania, with a last known address of 301 Mt. View Road, Friedens, Pennsylvania 15541. At all relevant times herein, Specht maintained separate registrations with the Federal Motor Carrier Safety Administration as a broker ("Lester E. Specht" -- USDOT #2233953) and a motor carrier ("Lester Specht" – USDOT #475018).

18.    Once served, Defendant Specht is subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of one or more of the following acts: his transacting any business in the state of West Virginia, his contracting to supply services or things in the state of West Virginia, his causing tortious injury by an act or omission in the state of West Virginia, and/or his regularly doing or soliciting business, or engaging in any other persistent course of conduct, or deriving substantial revenue from services rendered in the state of West Virginia and causing tortious injury in the state of West Virginia by an act or omission outside of the state of West Virginia.

19.    Defendant Scott Wagner Trucking, Inc., *d/b/a* S. Wagner Trucking, Inc. ("Wagner"), is a business entity organized and existing under the laws of the Commonwealth of

Pennsylvania, with its principal place of business located at RD#1 Box 160, TYRONE,

Pennsylvania 16686. At all relevant times herein, Wagner maintained registration with the

Federal Motor Carrier Safety Administration as a motor carrier (USDOT #631546).

20.    Once served, Defendant Wagner is subject to the personal jurisdiction of this

Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of

one or more of the following acts: its transacting any business in the state of West Virginia, its

contracting to supply services or things in the state of West Virginia, its causing tortious injury

by an act or omission in the state of West Virginia, and/or its regularly doing or soliciting

business, or engaging in any other persistent course of conduct, or deriving substantial revenue

from services rendered in the state of West Virginia and causing tortious injury in the state of

West Virginia by an act or omission outside of the state of West Virginia. Defendant Wagner is

further subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 31D-15-

1501(d) in that it made a contract to be performed, in whole or in part, by any party thereto in the

state of West Virginia, and/or in that it committed a tort, in whole or in part, in the state of West

Virginia.

21.    Defendant TRIPLE C TRANSPORTATION Limited Liability Company d/b/a

Triple C Transportation LLC ("Triple C"), is a business entity organized and existing under the

laws of the Commonwealth of Pennsylvania, with its principal place of business located at 209

Morocco Street, Somerset, Pennsylvania15501. Upon information and belief, no member of

Triple C is a citizen of the Commonwealth of Virginia.

22.    Once served, Defendant Triple C is subject to the personal jurisdiction of this

Court by virtue of W. Va. Code § 56-3-33 in that this cause of action arises from or grows out of

one or more of the following acts: its transacting any business in the state of West Virginia, its

contracting to supply services or things in the state of West Virginia, its causing tortious injury

by an act or omission in the state of West Virginia, and/or its regularly doing or soliciting

business, or engaging in any other persistent course of conduct, or deriving substantial revenue

from services rendered in the state of West Virginia and causing tortious injury in the state of

West Virginia by an act or omission outside of the state of West Virginia. Defendant Triple C is

further subject to the personal jurisdiction of this Court by virtue of W. Va. Code § 31D-15-

1501(d) in that it made a contract to be performed, in whole or in part, by any party thereto in the

state of West Virginia, and/or in that it committed a tort, in whole or in part, in the state of West

Virginia.

## FACTS

### Defendants' Relationships and Involvement in Transporting the Load

23.     At all relevant times herein, Defendant E.K. Bare was a Pennsylvania business

entity which, *inter alia*, sourced and arranged (as a broker and/or shipper) for the procurement

and transportation of chipping potatoes on behalf of, *inter alia*, purchasers (including companies

engaged in the business of processing the potatoes into consumer foods) around the country.

24.     At all relevant times herein, Defendant E.K. Bare advertised that it utilizes

"expert year-round potato haulers" and "provides its suppliers and customers 24/7 access to their

volume, contracts, quality and more" via the use of sophisticated supply-chain technology.

25.     At all relevant times herein, Defendant E.K. Bare further advertised that it "is

audited every year to maintain certification under the BRC: Agents and Brokers Issue 2

Standard" ("The BRC Standard"). In maintaining certification under the BRC Standard,

Defendant E.K. Bare was required to, *inter alia*, vet the performance history of third parties

providing transportation services on its behalf, keep itself apprised of the parties providing

transportation services on its behalf, monitor and control the risks in transporting goods via third parties, and ensure compliance with all relevant regulatory authorities and legislation pertaining to its operations.

26.     Upon information and belief, despite holding itself out to the public as providing services falling within the statutory definition of a broker,[1] Defendant E.K. Bare was not registered with the FMCSA as a broker, in violation of 49 U.S.C. § 13901(a) and 49 U.S.C. § 14916(a).

27.     Upon information and belief, on a date prior to May 11, 2019, Utz Quality Foods, Inc. ("Utz"), contacted Defendant E.K. Bare to procure and arrange for the transportation of the Load to one of Utz's facilities in Hanover, Pennsylvania.

28.     Upon information and belief, Defendant E.K. Bare sourced the Load from John M. Seay Farms in Bunnel, Florida.

29.     Upon information and belief, Defendant E.K. Bare, acting as a shipper or broker, retained Defendant Specht in his capacity as a motor carrier to transport the Load from Bunnel, Florida to Hanover, Pennsylvania.

30.     Accordingly, the Bill of Lading listed Defendant Specht as the "freight carrier" for the Load.

31.     Additionally, the Bill of Lading listed under "Carrier information," the trailer number for the load: XLB6315 – PA.

32.     At all relevant times herein, the trailer listed in paragraph 18 was utilized for load hauls by Defendant Triple C.

---

[1] *See* 49 U.S.C. § 13102(2); 49 C.F.R. § 371.2(a).

33.     Upon information and belief, Defendant Specht, despite acting as the motor carrier for the Load, re-brokered the Load to Defendant Wagner.

34.     Defendant Specht accepting the Load as a carrier, and subsequently re-brokering the Load to Defendant Wagner, constituted a practice known as "double brokering," which, at all relevant times herein, was illegal.[2]

35.     Upon information and belief, Defendant Wagner directed Defendant Triple C to pick up and transport the Load, pursuant to a lease ("the Lease") between the two wherein Defendant Triple C agreed to transport shipments Defendant Wagner tendered to it under Defendant Wagner's auspices.

36.     At all relevant times herein, Defendant E.K. Bare knew, or should have known, that Defendant Specht re-brokered the Load to Defendant Wagner and Defendant Wagner tendered the Load to Defendant Triple C.

37.     At all times relevant herein, Defendant Specht knew, or should have known, that Defendant Wagner tendered the Load to Defendant Triple C and its driver, Defendant Glover.

38.     On May 10, 2019, the day before the collision, Defendant Glover (Defendant Triple C's driver) picked up the Load from Bunnel, Florida, and departed for Hanover, Pennsylvania.

39.     Upon information and belief, Defendant Glover was issued a "shipping ticket," upon obtaining the Load.

40.     The aforementioned shipping ticket contained information indicating that Defendant E.K. Bare was the "buyer," Defendant Specht operated the "truck" and additional

---

[2] *See* 49 U.S.C. § 13901(c); 49 U.S.C. § 13902(a)(6); 49 C.F.R. § 371.7.

information identifying the trailer number described above which was, at all relevant times, associated with Defendant Triple C's trailer.

41.     Upon information and belief, for months prior to May 10, 2019, Defendant Specht had agreed to provide services as a motor carrier for Defendant E.K. Bare.

42.     Upon information and belief, prior to May 10, 2019, it was Defendant Specht's practice to double broker the shipments he agreed to transport for Defendant E.K. Bare to Defendants Wagner and Triple C.

43.     At all times relevant herein, as either a shipper or broker of the Load, Defendant E.K. Bare knew or should have known that Defendant Triple C and its driver, Defendant Glover, had picked up the Load and would be delivering the Load.

44.     At all relevant times herein, Defendants E.K. Bare, Specht, and Wagner had the capability to conduct a search of Defendant Triple C's motor carrier operating history.

45.     At all relevant times herein, a reasonably diligent search of Defendant Triple C's motor carrier operating history would have yielded, *inter alia*, the following information:

   a. Defendant Triple C's operating authority was revoked on April 10, 2019, one month before the subject collision;

   b. At the time it was hired, Defendant Triple C lacked valid insurance coverage;

   c. Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

   d. During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

   e. The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

f.   Defendant Triple C operated only one term-leased truck and trailer.

46.   Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, any individual or entity exercising reasonable diligence and care should have foreseen the risks presented by Defendant Triple C's motor carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on its behalf.

47.   At all relevant times herein, Defendants E.K. Bare, and Specht had the capability to conduct a search of Defendant Wagner's motor carrier operating history.

48.   At all relevant times herein, a reasonably diligent search of Defendant Wagner's motor carrier operating history would have yielded, *inter alia*, the following information:

a.   In the three years preceding the collision, Defendant Wagner had been involved in **four separate collisions**, and one instance where a vehicle operating under its authority drove off the road. All these events required the vehicles to be towed from the scene; and

b.   Prior to the collision, inspections of Defendant Wagner's drivers and vehicles yielded evidence of violations, including, but not limited to, failing to obey a traffic control device, speeding violations, failing to obey applicable operating rules, operating a motor vehicle without a Commercial Driver's License, excessive weight violations, violations of seat belt usage, failures to properly secure cargo, failing to properly secure break tubing and hoses, failing to ensure emergency equipment was in place or making use of such equipment when and as needed, operating a commercial vehicle without being medically certified as physically qualified to do so, failures to record duty status, failing to obey motor carrier responsibilities, driving beyond the 14-hour duty period, failing to maintain current driver duty status records, using a hand-held mobile telephone while operating a commercial motor vehicle, failing to have on board a commercial motor vehicle an information packet on the automatic on board recording system, improper installations of brake tubing and hose connections, inoperative brake lamps, failures to inspect, repair, and/or maintain parts and accessories, a driver's license violation, failing to properly mark self-propelled commercial motor vehicles and intermodal equipment, failing to interrupt more than eight hours of driving time with a thirty-minute interruption in driving status, operating a commercial motor vehicle without an anti-lock brake system malfunction circuit or signal, failing to meet the automatic brake system

requirements, operating with an inoperative turn signal, having a clamp or roto type brake out of adjustment, having inoperative or defective brakes, a state or international fuel tax violation, a state vehicle registration or license plate violation, using a radar detector in a commercial motor vehicle, and having an unsecured or no fire extinguisher.

49.     Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, any individual or entity exercising reasonable diligence and care should have foreseen the risks presented by Defendant Wagner's motor carrier operating history and should not have selected or allowed Defendant Wagner to transport the Load on its behalf.

50.     At all times relevant herein, Defendants E.K. Bare, Specht, and/or Wagner were required to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives, including load confirmation.

51.     At all times relevant herein, Defendants E.K. Bare, Specht, and/or Wagner failed to monitor the individuals/entities involved in the transportation of the Load, to ensure the individuals/entities they selected to perform a given role actually carried out said role, and to ensure the Load was transported safely.

52.     At all times relevant herein, Defendant E.K. Bare had the right or power of direction and control of the manner of the work performed by Defendants Specht, Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant E.K. Bare controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Specht, Wagner, Triple C and Glover.

16

53.     At all times relevant herein, Defendants Specht, Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant E.K. Bare, and acting within the scope of their employment, agency, and/or contract with Defendant E.K. Bare, thereby rendering Defendant E.K. Bare vicariously liable for their negligent and/or grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

54.     At all times relevant herein, Defendant Specht had the right or power of direction and control of the manner of the work performed by Defendants Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant Specht controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Wagner, Triple C and Glover.

55.     At all times relevant herein, Defendants Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant Specht, and acting within the scope of their employment, agency, and/or contract with Defendant Specht, thereby rendering Defendant Specht vicariously liable for their negligent and/or grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

56.     At all times relevant herein, Defendant Wagner had the right or power of direction and control of the manner of the work performed by Defendants Triple C and Glover. Additionally, at all relevant times herein, Defendant Wagner controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Triple C and Glover.

57.     At all times relevant herein, Defendants Triple C, and Glover were each the employee, agent, or servant of Defendant Wagner, and acting within the scope of their employment, agency, and/or contract with Defendant Wagner, thereby rendering Defendant

Wagner vicariously liable for their negligent and/or grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

58.     At all times relevant herein, Defendant Triple C had the right or power of direction and control of the manner of the work performed by Defendant Glover. Additionally, at all relevant times herein, Defendant Triple C controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendant Glover.

59.     At all times relevant, Defendant Glover was the employee, agent, or servant of Defendant Triple C, and acting within the scope of his employment, agency, and/or contract with Defendant Triple C, thereby rendering Defendant Triple C vicariously liable for his actions and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

60.     At all times relevant herein, Defendants Triple C, Wagner, E.K. Bare and Specht (collectively, the "Joint Venture Defendants") were engaged in a joint venture: an association of two or more persons to carry out a single business enterprise for profit, namely, the transportation of the Load, for which purposes they combined their property, money, effects, skill and/or knowledge.

61.     The Joint Venture Defendants' joint venture arose out of a contractual relationship between the parties which was oral, written, express, and/or implied.

## The Collision

62.     On May 11, 2019, at around 3:00 p.m., Ms. Mitter was legally driving northbound on US 340, through Jefferson County, West Virginia, in a 2015 Toyota Camry. Mr. King (Ms. Mitter's fiancé) was sitting in the back driver's side seat of the vehicle. B.K., the two-month-old infant son of Ms. Mitter and Mr. King, was sitting in a rear-facing car seat next to Mr. King.

18

63.     At the same time, Defendant Glover was traveling northbound on US 340, some distance behind Ms. Mitter's vehicle, in a 2000 Western Star tractor-trailer. The tractor-trailer was leased and operated by Defendant Triple C and bore the company name, "Triple C Transportation, LLC," and (its) USDOT #3094781. Upon information and belief, the total weight of the tractor and trailer was 117,000 pounds, or 58.5 tons.

64.     Upon Ms. Mitter's arrival at the intersection of US 340 and Augustine Avenue, the light at the intersection turned red. Accordingly, Ms. Mitter began to come to a stop behind three other vehicles at the intersection, and according to the crash data retrieved from her vehicle post-collision, was traveling at about 5.6 miles per hour at the moment of impact.

65.     Suddenly, without warning and at an extremely high rate of speed, Defendant Glover in the tractor-trailer violently collided with the rear end of Ms. Mitter's much smaller vehicle, sending it forward into a black Dodge Durango and then into the guardrail on the right side of the road. This horrific collision was captured on a dash cam in Ms. Mitter's vehicle. According to crash data retrieved from Ms. Mitter's vehicle post-collision, the impact of the tractor-trailer caused a speed *increase of 46.1 miles per hour*.

66.     Immediately upon impact, Ms. Mitter temporarily lost consciousness. Mr. King, gravely injured, groaned in agony for a period of time before succumbing to his injuries and dying. B.K. cried in the car seat as his father suffered and died beside him, and his mother lay helpless and severely injured (including horrific crush injuries to her left arm).

67.     Witnesses to the collision quickly converged at Ms. Mitter's vehicle to render aid. They were able to remove B.K. from the vehicle. Ms. Mitter and Mr. King were eventually removed from the vehicle by emergency responders.

68.     Between the initial impact and her being removed from her vehicle, Ms. Mitter regained consciousness. As emergency responders removed her from her vehicle, Ms. Mitter repeatedly screamed in severe pain and agony.

69.     Ms. Mitter was transported via helicopter to Inova Fairfax Hospital in Falls Church, Virginia. Due to a miscommunication with emergency transport, two-month-old B.K. was separately transported via ambulance to Winchester Medical Center in Winchester, Virginia. B.K. was later transported to Inova Fairfax Hospital. Mr. King was pronounced dead at the scene.

70.     Defendant Glover, upon information and belief, did not suffer any or only minor injuries. Sometime after exiting his vehicle, he exclaimed words to the effect of, "My life is ruined! I'm going to jail!"

71.     Defendant Glover later admitted to police that he saw that the light was red, but claimed he could not stop. While Defendant Glover asserted that his brakes were not functioning properly, he was responsible for ensuring that the brakes were properly functioning prior to undertaking to transport the Load.

72.     No marks on the pavement indicating pre-crash hard braking by Defendant Glover were present at the scene.

73.     Upon information and belief, at the moment of his violent collision with Ms. Mitter's vehicle at a red light, Defendant Glover was traveling at a speed of not less than 46.1 miles per hour, behavior that can only be described as reckless and outrageous.

74.     At all times relevant herein, the speed limit on the stretch of US 340 which is the subject of this collision was 50 miles per hour.

75.     At all times relevant herein, Ms. Mitter, B.K., and Mr. King, were all free from negligence, and in no way contributed to the aforesaid collision.

## Ms. Mitter's and B.K.'s Treatment and Injuries Post-Collision

76.     Upon arrival at Inova Fairfax Hospital, Ms. Mitter was in emotional shock and remained in a prolonged, partially catatonic state. Upon extensive evaluation, her physical injuries included, *inter alia*, closed and comminuted fractures and dislocations of the bones in her left arm, and entrapment/compression of the nerves in her left arm. Treatment for these injuries included multiple surgeries, with little relief.

77.     Following discharge, Ms. Mitter's physical injuries necessitated, *inter alia*, further extensive treatment, additional surgery, orthotic devices, and rehabilitative therapy.

78.     To this day, Ms. Mitter remains in treatment, and is attempting to cope with the lifelong ramifications of her severe and permanent physical and psychological injuries.

79.     During her ongoing road to recovery, Ms. Mitter has had, and continues to endure, extreme difficulty in caring for B.K., including but are not limited to, physical disabilities and limitations, inability to breastfeed B.K. for a period of time (due to Ms. Mitter's necessary use of painkillers), and the loss of Mr. King who, prior to his early death, provided love, care, pecuniary and other support to B.K. and Ms. Mitter.  At the time of his death, Mr. King was just 32 years old and Ms. Mitter was just 29 years old.

80.     Following the collision, B.K. was diagnosed at Winchester Medical Center with a closed fracture of the frontal bone (forehead), and a subarachnoid hemorrhage. These injuries have required, and continue to require, extensive follow-up treatment and evaluations.

81.     Following the collision, medical professionals have closely monitored B.K.'s development. Initial indications reveal that B.K. is developmentally delayed in multiple respects,

including, but not limited to, the development of his gross and fine motor skills, strongly suggesting neurological impairment.

82. The severity of B.K.'s collision-related condition as he grows only adds to the immense psychological toll the collision has caused Ms. Mitter.

## Applicable Statutes and Regulations

83. At all relevant times herein, the following statutes and regulations in paragraphs 84-94 were in effect and violated by one or more of the Defendants to this action, as described herein.

84. 49 U.S.C. § 13901, "Requirements for Registration," provides, in pertinent part, (a) " [a] person may provide transportation as a motor carrier subject to jurisdiction under subchapter I of chapter 135 or service as a freight forwarder subject to jurisdiction under subchapter III of such chapter, or service as a broker for transportation subject to jurisdiction under subchapter I of such chapter only if the person is registered under this chapter to provide such transportation or service," and (c) "[f]or each agreement to provide transportation or service for which registration is required under this chapter, the registrant shall specify, in writing, the authority under which the person is providing such transportation or service."

85. 49 U.S.C. § 13902, "Registration of Motor Carriers," provides, in pertinent part, (a)(6) "[a] motor carrier may not broker transportation services unless the motor carrier has registered as a broker under this chapter."

86. 49 U.S.C. § 14916, "Unlawful Brokerage Activities," provides, in pertinent part, (a) "[a] person may provide interstate brokerage services as a broker only if that person (1) is registered under, and in compliance with, section 13904; and (2) has satisfied the financial security requirements under section 13906."

87. 49 C.F.R. § 371.7, "Misrepresentation," provides, in pertinent part, "[a] broker shall not perform or offer to perform any brokerage service (including advertising), in any name other than that in which its registration is issued. (b) A broker shall not, directly or indirectly, represent its operations to be that of a carrier. Any advertising shall show the broker status of the operation."

88. 49 C.F.R. § 392.2, "Applicable Operating Rules," provides, in pertinent part, "[e]very commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated."

89. 49 C.F.R. § 392.7, "Equipment, Inspection, and Use," provides, in pertinent part, (a) "[n]o commercial motor vehicle shall be driven unless the driver is satisfied that the following parts and accessories are in good working order, nor shall any driver fail to use or make use of such parts and accessories when and as needed: Service brakes, including trailer brake connections."

90. W. Va. Code § 17C-5-1, "Negligent Homicide," provides, in pertinent part, (a) "[w]hen the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle anywhere in this state in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

91. W. Va. Code § 17C-5-3, "Reckless Driving," provides, in pertinent part, (a) "[a]ny person who drives any vehicle upon any street or highway . . . in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

92. W. Va. Code § 17C-6-1, "Speed Limitations Generally," provides, in pertinent part, (a) "[n]o person may drive a vehicle on a highway at a speed greater than is reasonable and prudent under the existing conditions and the actual and potential hazards. In every event speed

shall be controlled as necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highways in compliance with legal requirements and the duty of all persons to use due care [and] (c) [t]he driver of every vehicle shall, consistent with the requirements of subsection (a) of this section, drive at an appropriate reduced speed when approaching . . . an intersection[,] when approaching and going around a curve [and] when approaching a hill crest."[3]

93.     Charles Town, W. Va., Ordinance No. 333.02, "Reckless Driving," provides, in pertinent part, (a) "[n]o person shall drive any vehicle upon any street or highway . . . in willful or wanton disregard for the safety of persons or property."

94.     Charles Town, W. Va., Ordinance No. 333.03, "Hazardous Driving," provides, in pertinent part, (a) "[n]o person shall operate a motor vehicle . . . without exercising reasonable and ordinary control over such vehicle [and] (c) [n]o person shall operate a motor vehicle . . . without giving his full time and attention to the operation of such vehicle;"

95.     The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Ms. Mitter, Mr. King, and B.K.

96.     Each of the Defendants' violations of the above statutes and regulations were a proximate cause of Ms. Mitter's, Mr. King's, and B.K.'s injuries, thereby constituting *prima facie* evidence of negligence against each.[4]

---

[3] *See also* Charles Town, W. Va., Ordinance No. 335.01 (same).
[4] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

**COUNT I**
**Negligence**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff Individually and on Behalf of B.K.,**
**<u>Against Defendants Glover, Wagner and Triple C</u>**

97.     All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this direct negligence count both individually and on behalf of B.K., against Defendant Glover, and against Defendants Wagner and Triple C on theories of *respondeat superior*/vicarious liability and/or agency.

98.     At all relevant times herein, Defendant Glover owed a duty to Plaintiff and B.K. to drive in a safe and reasonable manner and obey all traffic and other commercial motor vehicle safety laws.

99.     On May 11, 2019, Defendant Glover breached those duties when he negligently drove his tractor-trailer into the rear of Ms. Mitter's vehicle. At all times relevant hereto, Defendant Glover operated his vehicle in a negligent manner by, *inter alia*, (a) following too closely; (b) failing to maintain control of his vehicle; (c) driving in a careless and prohibited manner; (d) driving at a speed that was greater than was reasonable and prudent under the circumstances; (e) failing to stop; (f) failing to take evasive action;  (g) failing to keep a careful lookout; and (h) failing to maintain his vehicle in proper condition for use in public roadways.

100.     Defendant Glover further breached those duties through his violations of, *inter alia*, the following statutes and regulations:

    a.  49 C.F.R. § 392.2 (failing to operate his motor vehicle in accordance with the applicable laws, ordinances, and regulations);

    b.  49 C.F.R. § 392.7 (failing to make use of his service brakes and trailer brake connections);

    c.  W. Va. Code § 17C-5-1 (driving in reckless disregard of the safety of others and proximately causing the death of Mr. King);

    d.   W. Va. Code § 17C-5-3 (driving in willful or wanton disregard for the safety of persons) and Charles Town W. Va. Ordinance No. 333.02 (same);

    e.   W. Va. Code § 17C-6-1 (driving at a speed in excess of what was reasonable and prudent under the existing conditions and potential hazards, failing to control his speed to avoid colliding with persons on the highways, and driving at an inappropriate speed while approaching an intersection) and Charles Town W. Va., Ordinance No. 335.01 (same);

    f.   Charles Town W. Va., Ordinance No. 333.03 (operating his motor vehicle without exercising reasonable and ordinary control over such vehicle and without giving his full time and attention to its operation).

101.    The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Ms. Mitter and B.K.

102.    Defendant Glover's violations of the above statutes and regulations were a proximate cause of Ms. Mitter's, and B.K.'s injuries, thereby constituting *prima facie* evidence of his negligence.[5]

103.    The aforesaid negligent acts and omissions of Defendant Glover were a direct, foreseeable, and proximate cause of Plaintiff's damages, including, but not limited to, her conscious pain and suffering, physical impairment, past medical expenses of approximately $205,000.00, mental anguish, emotional distress, lost wages, diminished earning capacity, annoyance and inconvenience, and loss of her capacity to enjoy life, all of which she has incurred and will in the future continue to incur.

104.    The aforesaid negligent acts and omissions of Defendant Glover were a direct, foreseeable, and proximate cause of B.K.'s damages, including, but not limited to, his conscious pain and suffering, physical impairment, past medical expenses of approximately $42,000.00, mental anguish, emotional distress, diminished earning capacity, annoyance and inconvenience,

---

[5] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

and loss of his capacity to enjoy life, all of which he has incurred and will in the future continue to incur.

105.    At all times relevant herein, Defendant Triple C had the right or power of direction and control of the manner of the work performed by Defendant Glover. Additionally, at all relevant times herein, Defendant Triple C controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendant Glover.

106.    At all relevant times herein, Defendant Glover was the employee, agent, or servant of Defendant Triple C, acting within the scope of his employment, agency, and/or contract with Triple C, thereby rendering Triple C vicariously liable for his actions and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

107.    At all relevant times herein, Defendant Wagner had the right or power of direction and control of the manner of the work performed by Defendants Triple C and Glover. Additionally, at all relevant times herein, Defendant Wagner controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Triple C and Glover.

108.    At all relevant times herein, Defendant Triple C and its driver, Defendant Glover, were each the employee, agent, or servant of Defendant Wagner, acting within the scope of their employment, agency, and/or contract with Wagner, thereby rendering Wagner vicariously liable for their negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

109.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Glover was engaged in the carrying of loaded freight on public highways in a high-powered tractor-trailer, which may only be lawfully conducted under a franchise granted by

public authority and is an activity presenting an unreasonable risk of harm to others.

Accordingly, as the owner of the public franchise under which Defendant Glover was operating,

Defendant Wagner is liable for Defendant Glover's negligent acts and omissions.[6]

110.    Regardless of the employment, principal-agent, or contractual relationship,

Defendant Wagner was the owner of the USDOT # under which Defendant Glover was operating

pursuant to its Lease with Defendant Triple C, creating a presumption of employment and

therefore responsibility for the negligent acts of Defendant Triple C and its driver, Defendant

Glover, by operation of law.[7]

WHEREFORE, Plaintiff, individually and on behalf of her minor child, B.K.,

respectfully requests for each judgments against Defendants Glover, Wagner, and Triple C,

jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for

compensatory damages in an amount to be determined and proven at trial, in excess of

$75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment

interest as permitted by law; and (d) for such other and further relief as this Court deems

appropriate.

### COUNT II
### Gross Negligence
### (Common Law and Under W. Va. Code § 55-7-9)
### Brought by Plaintiff Individually and on Behalf of B.K.,
### Against Defendants Glover, Wagner and Triple C

111.    All allegations and causes of action in this Complaint, pled above and below, are

incorporated into this cause of action by reference. Plaintiff brings this direct gross negligence

---

[6] *See Griffith v. George Transfer & Rigging*, 201 S.E.2d 281, 285-87 (W. Va. 1973).
[7] *See Edwards v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867, 877-79 (S.D. W. Va. 2017).

count both individually and on behalf of B.K., against Defendant Glover, and against Defendants Wagner and Triple C on theories of *respondeat superior*/vicarious liability and agency.

112.    At all relevant times herein, Defendant Glover owed a duty to Plaintiff and B.K. to drive in a safe and reasonable manner and obey all traffic and other commercial motor vehicle safety laws.

113.    On May 11, 2019, Defendant Glover breached those duties when he, in a grossly negligent manner, drove his tractor-trailer into the rear of Ms. Mitter's vehicle. At all times relevant hereto, Defendant Glover operated his vehicle in a grossly negligent manner by, *inter alia*, (a) following too closely; (b) failing to maintain control of his vehicle; (c) driving in a careless and prohibited manner; (d) driving at a speed that was greater than was reasonable and prudent under the circumstances; (e) failing to stop; (f) failing to take evasive action; (g) failing to keep a careful lookout; and (h) failing to maintain his vehicle in proper condition for use on public highways.

114.    Defendant Glover further breached those duties through his violations of, *inter alia*, the following statutes and regulations:

a.    49 C.F.R. § 392.2 (failing to operate his motor vehicle in accordance with the applicable laws, ordinances, and regulations);

b.    49 C.F.R. § 392.7 (failing to make use of his service brakes and trailer brake connections);

c.    W. Va. Code § 17C-5-1 (driving in reckless disregard of the safety of others and proximately causing the death of Mr. King);

d.    W. Va. Code § 17C-5-3 (driving in willful or wanton disregard for the safety of persons) and Charles Town W. Va. Ordinance No. 333.02 (same);

e.    W. Va. Code § 17C-6-1 (driving at a speed in excess of what was reasonable and prudent under the existing conditions and potential hazards, failing to control his speed to avoid colliding with persons on the highways, and driving at an

inappropriate speed while approaching an intersection) and Charles Town W. Va., Ordinance No. 335.01 (same);

f.   Charles Town W. Va., Ordinance No. 333.03 (operating his motor vehicle without exercising reasonable and ordinary control over such vehicle and without giving his full time and attention to its operation).

115.   The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Ms. Mitter and B.K.

116.   Defendant Glover's violations of the above statutes and regulations were a proximate cause of Ms. Mitter's, and B.K.'s injuries, thereby constituting *prima facie* evidence of his gross negligence.[8]

117.   Defendant Glover's grossly negligent acts and omissions, including, but not limited to, his violations of the above statutes and regulations, viewed individually and collectively, and considering the content and character of his violations, evince an indifference to others and an utter disregard of prudence amounting to a complete neglect of the safety of individuals traveling on the highways.

118.   The aforesaid grossly negligent acts and omissions of Defendant Glover were a direct, foreseeable, and proximate cause of Plaintiff's damages, including, but not limited to, her conscious pain and suffering, physical impairment, past medical expenses of approximately $205,0000.00, mental anguish, emotional distress, lost wages, diminished earning capacity, annoyance and inconvenience, and loss of her capacity to enjoy life, all of which she has incurred and will in the future continue to incur.

119.   The aforesaid grossly negligent acts and omissions of Defendant Glover were a direct, foreseeable, and proximate cause of B.K.s' damages, including, but not limited to, his

---

[8] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

conscious pain and suffering, physical impairment, past medical expenses of approximately $42,000.00, mental anguish, emotional distress, diminished earning capacity, annoyance and inconvenience, and loss of his capacity to enjoy life, all of which he has incurred and will in the future continue to incur.

120.    The damages suffered by Plaintiff and B.K. were the result of Defendant Glover's conduct which evinced his conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, including Plaintiff and B.K., thereby entitling them to punitive damages.[9]

121.    At all times relevant herein, Defendant Triple C had the right or power of direction and control of the manner of the work performed by Defendant Glover. Additionally, at all relevant times herein, Defendant Triple C controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendant Glover.

122.    Defendant Triple C knowingly employed or retained a careless and incompetent servant, Glover, and thereby impliedly authorized or ratified Glover's grossly negligent acts, committed in the course of his employment and/or agency, and because Glover's negligence was wanton and willful, the master (Triple C) is liable for exemplary or punitive damages.

123.    At all relevant times herein, Defendant Glover was the employee, agent, or servant of Defendant Triple C, acting within the scope of his employment, agency, and/or contract with Triple C, and Triple C knowingly retained Defendant thereby rendering Triple C vicariously liable for his grossly negligent actions and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

124.    At all relevant times herein, Defendant Wanger had the right or power of direction and control of the manner of the work performed by Defendants Triple C and Glover.

---

[9] *See* W. Va. Code § 55-7-29.

Additionally, at all relevant times herein, Defendant Wagner controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Triple C and Glover.

125.    Defendant Wagner knowingly employed or retained careless and incompetent servants, Triple C and Glover, and thereby impliedly authorized or ratified Glover's and Triple C's grossly negligent acts, committed in the course of his employment and/or agency, and because Glover's negligence was wanton and willful, the master (Wagner) is liable for exemplary or punitive damages.

126.    At all relevant times herein, Defendant Triple C and its driver, Defendant Glover, were each the employee, agent, or servant of Defendant Wagner, acting within the scope of their employment, agency, and/or contract with Wagner thereby rendering Wagner vicariously liable for their grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

127.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Glover was engaged in the carrying of loaded freight on public highways in a high-powered tractor-trailer, which may only be lawfully conducted under a franchise granted by public authority and is an activity presenting an unreasonable risk of harm to others. Accordingly, as the owner of the public franchise under which Defendant Glover was operating, Defendant Wagner is liable for Defendant Glover's grossly negligent acts and omissions.[10]

128.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Wagner was the owner of the USDOT # under which Defendant Glover was operating pursuant to its Lease with Defendant Triple C, creating a presumption of employment and

---

[10] *See Griffith v. George Transfer & Rigging*, 201 S.E.2d 281, 285-87 (W. Va. 1973).

therefore responsibility for the negligent acts of Defendant Triple C and its driver, Defendant

Glover by operation of law.[11]

WHEREFORE, Plaintiff, individually and on behalf of her minor child, B.K.,

respectfully requests for each judgments against Defendants Glover, Wagner, and Triple C,

jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for

compensatory damages in an amount to be determined and proven at trial, in excess of

$75,000.00; (b) for punitive damages in an amount a jury deems appropriate; (c) for costs

incurred in connection with this suit; (d) for pre- and post-judgment interest as permitted by law;

and (e) for such other and further relief as this Court deems appropriate.

### COUNT III
### Wrongful Death – Negligence
### (Pursuant to W. Va. Code §§ 55–7–5 *et seq.*)
### (Common Law and Under W. Va. Code § 55-7-9)
### Brought by Plaintiff, as Personal Representative of Mr. King's Estate,
### <u>Against Defendants Glover, Wagner and Triple C</u>

129.     All allegations and causes of action in this Complaint, pled above and below, are

incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as

the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-*

*7-5 et seq.* Plaintiff brings this direct negligence count individually against Defendant Glover,

and against Defendants Wagner and Triple C on theories of *respondeat superior*/vicarious

liability and agency.

130.     At all relevant times herein, Defendant Glover owed a duty to Mr. King to drive

in a safe and reasonable manner and obey all traffic and other commercial motor vehicle safety

laws.

---

[11] *See Edwards v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867, 877-79 (S.D. W. Va. 2017).

131.    On May 11, 2019, Defendant Glover breached those duties when he negligently drove his tractor-trailer into the rear of Ms. Mitter's vehicle. At all times relevant hereto, Defendant Glover operated his vehicle in a negligent manner by, *inter alia*, (a) following too closely; (b) failing to maintain control of his vehicle; (c) driving in a careless and prohibited manner; (d) driving at a speed that was greater than was reasonable and prudent under the circumstances; (e) failing to stop; (f) failing to take evasive action; (g) failing to keep a careful lookout; and (h) failing to maintain his vehicle in proper condition for use on public roadways.

132.    Defendant Glover further breached those duties through his violations of, *inter alia*, the following statutes and regulations:

   a.   49 C.F.R. § 392.2 (failing to operate his motor vehicle in accordance with the applicable laws, ordinances, and regulations);

   b.   49 C.F.R. § 392.7 (failing to make use of his service brakes and trailer brake connections);

   c.   W. Va. Code § 17C-5-1 (driving in reckless disregard of the safety of others and proximately causing the death of Mr. King);

   d.   W. Va. Code § 17C-5-3 (driving in willful or wanton disregard for the safety of persons) and Charles Town W. Va. Ordinance No. 333.02 (same);

   e.   W. Va. Code § 17C-6-1 (driving at a speed in excess of what was reasonable and prudent under the existing conditions and potential hazards, failing to control his speed to avoid colliding with persons on the highways, and driving at an inappropriate speed while approaching an intersection) and Charles Town W. Va., Ordinance No. 335.01 (same);

   f.   Charles Town W. Va., Ordinance No. 333.03 (operating his motor vehicle without exercising reasonable and ordinary control over such vehicle and without giving his full time and attention to its operation).

133.    The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Mr. King.

134.    Defendant Glover's violations of the above statutes and regulations were a proximate cause of Mr. King's death, and his statutory beneficiaries' damages, thereby constituting *prima facie* evidence of his negligence.[12]

135.    The aforesaid negligent acts and omissions of Defendant Glover directly, foreseeably, and proximately caused the death of Mr. King and, resultingly, various damages to his statutory beneficiaries, including, but not limited to, sorrow, mental anguish, and solace (including the loss of the society, companionship, comfort, guidance, kindly offices, and advice of Mr. King), the loss of the income of Mr. King, the loss of the services, protection, care, and assistance provided by Mr. King, the expenses associated with Mr. King's funeral, and the extreme and extended pre-death conscious pain and suffering of Mr. King.[13]

136.    At all times relevant herein, Defendant Triple C had the right or power of direction and control of the manner of the work performed by Defendant Glover. Additionally, at all relevant times herein, Defendant Triple C controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendant Glover.

137.    At all relevant times herein, Defendant Glover was the employee, agent, or servant of Defendant Triple C, acting within the scope of his employment, agency, and/or contract with Triple C, thereby rendering Triple C vicariously liable for his actions and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

138.    At all relevant times herein, Defendant Wanger had the right or power of direction and control of the manner of the work performed by Defendants Triple C and Glover. Additionally, at all relevant times herein, Defendant Wagner controlled, *inter alia*, the selection

---

[12] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).
[13] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D. W. Va. 2003).

and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Triple C and Glover.

139.    At all relevant times herein, Defendant Triple C and its driver, Defendant Glover, were each the employee, agent, or servant of Defendant Wagner, acting within the scope of their employment, agency, and/or contract with Wagner, thereby rendering Wagner vicariously liable for their negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

140.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Glover was engaged in the carrying of loaded freight on public highways in a high-powered tractor-trailer, which may only be lawfully conducted under a franchise granted by public authority and is an activity presenting an unreasonable risk of harm to others. Accordingly, as the owner of the public franchise under which Defendant Glover was operating, Defendant Wagner is liable for Defendant Glover's negligent acts and omissions.[14]

141.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Wagner was the owner of the USDOT # under which Defendant Glover was operating pursuant to its Lease with Defendant Triple C, creating a presumption of employment and therefore responsibility for the negligent acts of Defendant Triple C and its driver, Defendant Glover by operation of law.[15]

WHEREFORE, Plaintiff, as personal representative of the Estate of John King, respectfully requests judgment against Defendants Glover, Wagner, and Triple C, jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory

---

[14] *See Griffith v. George Transfer & Rigging*, 201 S.E.2d 281, 285-87 (W. Va. 1973).
[15] *See Edwards v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867, 877-79 (S.D. W. Va. 2017).

damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

**COUNT IV**
**Wrongful Death – Gross Negligence**
**(Pursuant to W. Va. Code §§ 55–7–5 *et seq.*)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative,**
**<u>Against Defendants Glover, Wagner and Triple C</u>**

142.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-7-5 et seq.* and *W. Va. Code § 55-7-9*. Plaintiff brings this direct gross negligence count individually against Defendant Glover, and against Defendants Wagner and Triple C on theories of *respondeat superior*/vicarious liability and agency.

143.    At all relevant times herein, Defendant Glover owed a duty to Mr. King to drive in a safe and reasonable manner and obey all traffic and other commercial motor vehicle safety laws.

144.    On May 11, 2019, Defendant Glover breached those duties when he, in a grossly negligent manner, drove his tractor-trailer into the rear of Ms. Mitter's vehicle. At all times relevant hereto, Defendant Glover operated his vehicle in a grossly negligent manner by, *inter alia*, (a) following too closely; (b) failing to maintain control of his vehicle; (c) driving in a careless and prohibited manner; (d) driving at a speed that was greater than was reasonable and prudent under the circumstances; (e) failing to stop; (f) failing to take evasive action; (g) failing to keep a careful lookout; and (h) failing to maintain his vehicle in proper condition to use on public roadways.

145.    Defendant Glover further breached those duties through his violations of, *inter alia*, the following statutes and regulations:

    a.  49 C.F.R. § 392.2 (failing to operate his motor vehicle in accordance with the applicable laws, ordinances, and regulations);

    b.  49 C.F.R. § 392.7 (failing to make use of his service brakes and trailer brake connections);

    c.  W. Va. Code § 17C-5-1 (driving in reckless disregard of the safety of others and proximately causing the death of Mr. King);

    d.  W. Va. Code § 17C-5-3 (driving in willful or wanton disregard for the safety of persons) and Charles Town W. Va. Ordinance No. 333.02 (same);

    e.  W. Va. Code § 17C-6-1 (driving at a speed in excess of what was reasonable and prudent under the existing conditions and potential hazards, failing to control his speed to avoid colliding with persons on the highways, and driving at an inappropriate speed while approaching an intersection) and Charles Town W. Va., Ordinance No. 335.01 (same);

    f.  Charles Town W. Va., Ordinance No. 333.03 (operating his motor vehicle without exercising reasonable and ordinary control over such vehicle and without giving his full time and attention to its operation).

146.    The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Mr. King.

147.    Defendant Glover's violations of the above statutes and regulations were a proximate cause of Mr. King's death and his statutory beneficiaries' damages, thereby constituting *prima facie* evidence of his gross negligence.[16]

148.    Defendant Glover's grossly negligent acts and omissions, including, but not limited to, his violations of the above statutes and regulations, viewed individually and collectively, and considering the content and character of his violations, evince an indifference to

---

[16] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

others and an utter disregard of prudence amounting to a complete neglect of the safety of individuals traveling on the highways.

149.   The aforesaid grossly negligent acts and omissions of Defendant Glover directly, foreseeably, and proximately caused the death of Mr. King and, resultingly, various damages to his statutory beneficiaries, including, but not limited to, sorrow, mental anguish, and solace (which may include the loss of the loss of the society, companionship, comfort, guidance, kindly offices and advice of Mr. King), the loss the of income of Mr. King, the loss of the services, protection, care and assistance provided by Mr. King, the expenses associated with Mr. King's funeral, and the extreme and extended pre-death conscious pain and suffering of Mr. King.[17]

150.   The damages suffered by Mr. King were the result of Defendant Glover's conduct which evinced his conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, including Plaintiff and B.K., thereby entitling his statutory beneficiaries to punitive damages.[18]

151.   At all times relevant herein, Defendant Triple C had the right or power of direction and control of the manner of the work performed by Defendant Glover. Additionally, at all relevant times herein, Defendant Triple C controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendant Glover.

152.   Defendant Triple C knowingly employed or retained a careless and incompetent servant, Glover, and thereby impliedly authorized or ratified Glover's grossly negligent acts, committed in the course of his employment and/or agency, and because Glover's negligence was wanton and willful, the master (Triple C) is liable for exemplary or punitive damages.

---

[17] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).
[18] *See* W. Va. Code § 55-7-29.

153.    At all relevant times herein, Defendant Glover was the employee, agent, or servant of Defendant Triple C, acting within the scope of his employment, agency, and/or contract with Triple C, thereby rendering Triple C vicariously liable for his grossly negligent actions and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

154.    At all relevant times herein, Defendant Wanger had the right or power of direction and control of the manner of the work performed by Defendants Triple C and Glover. Additionally, at all relevant times herein, Defendant Wagner controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Triple C and Glover.

155.    Defendant Wagner knowingly employed or retained incompetent servants, Triple C and Glover, and thereby impliedly authorized or ratified Glover's negligent acts, committed in the course of his employment and/or agency, and because Glover's negligence was wanton and willful, the master (Wagner) is liable for exemplary or punitive damages.

156.    At all relevant times herein, Defendant Triple C and its driver, Defendant Glover, were each the employee, agent, or servant of Defendant Wagner, acting within the scope of their employment, agency, and/or contract with Wagner, thereby rendering Wagner vicariously liable for their grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

157.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Glover was engaged in the carrying of loaded freight on public highways in a high-powered tractor-trailer, which may only be lawfully conducted under a franchise granted by public authority and is an activity presenting an unreasonable risk of harm to others.

Accordingly, as the owner of the public franchise under which Defendant Glover was operating, Defendant Wagner is liable for Defendant Glover's grossly negligent acts and omissions.[19]

158.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Wagner was the owner of the USDOT # under which Defendant Glover was operating pursuant to its Lease with Defendant Triple C, creating a presumption of employment and therefore responsibility for the negligent acts of Defendant Triple C and its driver, Defendant Glover by operation of law.[20]

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendants Glover, Wagner, and Triple C, jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for punitive damages in an amount a jury deems appropriate; (c) for costs incurred in connection with this suit; (d) for pre- and post-judgment interest as permitted by law; and (e) for such other and further relief as this Court deems appropriate.

**COUNT V**
**Personal Injury Resulting in Death – Negligence**
**(Pursuant to W. Va. Code §§ 55–7–8)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**Against Defendants Glover, Wagner and Triple C**

159.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-*

---

[19] *See Griffith v. George Transfer & Rigging*, 201 S.E.2d 281, 285-87 (W. Va. 1973).
[20] *See Edwards v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867, 877-79 (S.D. W. Va. 2017).

*7-5 et seq.* and *W. Va. Code § 55-7-9.* Plaintiff brings this direct negligence count individually against Defendant Glover, and against Defendants Wagner and Triple C on theories of *respondeat superior*/vicarious liability and agency.

160.   At all relevant times herein, Defendant Glover owed to Mr. King a duty to drive in a safe and reasonable manner and obey all traffic and other commercial motor vehicle safety laws.

161.   On May 11, 2019, Defendant Glover breached those duties when he negligently drove his tractor-trailer into the rear of Ms. Mitter's vehicle. At all times relevant hereto, Defendant Glover operated his vehicle in a negligent manner by, *inter alia*, (a) following too closely; (b) failing to maintain control of his vehicle; (c) driving in a careless and prohibited manner; (d) driving at a speed that was greater than was reasonable and prudent under the circumstances; (e) failing to stop; (f) failing to take evasive action; (g) failing to keep a careful lookout; and (h) failing to maintain his vehicle in proper condition to use on public roadways.

162.   Defendant Glover further breached those duties through his violations of, *inter alia*, the following statutes and regulations:

   a.   49 C.F.R. § 392.2 (failing to operate his motor vehicle in accordance with the applicable laws, ordinances, and regulations);

   b.   49 C.F.R. § 392.7 (failing to make use of his service brakes and trailer brake connections);

   c.   W. Va. Code § 17C-5-1 (driving in reckless disregard of the safety of others and proximately causing the death of Mr. King);

   d.   W. Va. Code § 17C-5-3 (driving in willful or wanton disregard for the safety of persons) and Charles Town W. Va. Ordinance No. 333.02 (same);

   e.   W. Va. Code § 17C-6-1 (driving at a speed in excess of what was reasonable and prudent under the existing conditions and potential hazards, failing to control his speed to avoid colliding with persons on the highways, and driving at an

inappropriate speed while approaching an intersection) and Charles Town W. Va., Ordinance No. 335.01 (same);

f.   Charles Town W. Va., Ordinance No. 333.03 (operating his motor vehicle without exercising reasonable and ordinary control over such vehicle and without giving his full time and attention to its operation).

163.   The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Mr. King.

164.   Defendant Glover's violations of the above statutes and regulations were a proximate cause of Mr. King's personal injuries resulting in death, thereby constituting *prima facie* evidence of his negligence.[21]

165.   The aforesaid negligent acts and omissions of Defendant Glover directly, foreseeably, and proximately caused personal injury to Mr. King and, resultingly, extreme and extended pre-death conscious pain and suffering, and ultimately death.[22]

166.   At all times relevant herein, Defendant Triple C had the right or power of direction and control of the manner of the work performed by Defendant Glover. Additionally, at all relevant times herein, Defendant Triple C controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendant Glover.

167.   At all relevant times herein, Defendant Glover was the employee, agent, or servant of Defendant Triple C, acting within the scope of his employment, agency, and/or contract with Triple C, thereby rendering Triple C vicariously liable for his negligent actions and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

---

[21] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).
[22] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).

168.    At all relevant times herein, Defendant Wanger had the right or power of direction and control of the manner of the work performed by Defendants Triple C and Glover. Additionally, at all relevant times herein, Defendant Wagner controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Triple C and Glover.

169.    At all relevant times herein, Defendant Triple C and its driver, Defendant Glover, were each the employee, agent, or servant of Defendant Wagner, acting within the scope of their employment, agency, and/or contract with Wagner, thereby rendering Wagner vicariously liable for their negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

170.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Glover was engaged in the carrying of loaded freight on public highways in a high-powered tractor-trailer, which may only be lawfully conducted under a franchise granted by public authority and is an activity presenting an unreasonable risk of harm to others. Accordingly, as the owner of the public franchise under which Defendant Glover was operating, Defendant Wagner is liable for Defendant Glover's negligent acts and omissions.[23]

171.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Wagner was the owner of the USDOT # under which Defendant Glover was operating pursuant to its Lease with Defendant Triple C and is therefore presumptively responsible for the negligent acts of Defendant Triple C and its driver, Defendant Glover by operation of law.[24]

---

[23] *See Griffith v. George Transfer & Rigging*, 201 S.E.2d 281, 285-87 (W. Va. 1973).
[24] *See Edwards v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867, 877-79 (S.D. W. Va. 2017).

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendants Glover, Wagner, and Triple C, jointly, as follows: (a) compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

### COUNT VI
**Personal Injury Resulting in Death – Gross Negligence**
**(Pursuant to W. Va. Code §§ 55–7–8)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**Against Defendants Glover, Wagner and Triple C**

172.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-7-5 et seq.* and *W. Va. Code § 55-7-9.* Plaintiff brings this direct gross negligence count individually against Defendant Glover, and against Defendants Wagner and Triple C on theories of *respondeat superior*/vicarious liability and agency.

173.    At all relevant times herein, Defendant Glover owed a duty to Mr. King to drive in a safe and reasonable manner and obey all traffic and other commercial motor vehicle safety laws.

174.    On May 11, 2019, Defendant Glover breached those duties when he, in a grossly negligent manner, drove his tractor-trailer into the rear of Ms. Mitter's vehicle. At all times relevant hereto, Defendant Glover operated his vehicle in a grossly negligent manner by, *inter alia*, (a) following too closely; (b) failing to maintain control of his vehicle; (c) driving in a careless and prohibited manner; (d) driving at a speed that was greater than was reasonable and

prudent under the circumstances; (e) failing to stop; (f) failing to take evasive action; (g) failing

to keep a careful lookout; and (h) failing to maintain his vehicle in proper condition to use on

public roadways.

175.   Defendant Glover further breached those duties through his violations of, *inter*

*alia*, the following statutes and regulations:

a.   49 C.F.R. § 392.2 (failing to operate his motor vehicle in accordance with the applicable laws, ordinances, and regulations);

b.   49 C.F.R. § 392.7 (failing to make use of his service brakes and trailer brake connections);

c.   W. Va. Code § 17C-5-1 (driving in reckless disregard of the safety of others and proximately causing the death of Mr. King);

d.   W. Va. Code § 17C-5-3 (driving in willful or wanton disregard for the safety of persons) and Charles Town W. Va. Ordinance No. 333.02 (same);

e.   W. Va. Code § 17C-6-1 (driving at a speed in excess of what was reasonable and prudent under the existing conditions and potential hazards, failing to control his speed to avoid colliding with persons on the highways, and driving at an inappropriate speed while approaching an intersection) and Charles Town W. Va., Ordinance No. 335.01 (same);

f.   Charles Town W. Va., Ordinance No. 333.03 (operating his motor vehicle without exercising reasonable and ordinary control over such vehicle and without giving his full time and attention to its operation).

176.   The statutes and regulations above were enacted to prevent the kind of harm

caused by the collision and to protect persons such as Mr. King.

177.   Defendant Glover's violations of the above statutes and regulations were a

proximate cause of Mr. King's personal injuries resulting in death, thereby constituting *prima*

*facie* evidence of his negligence.[25]

---

[25] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

178.    Defendant Glover's grossly negligent acts and omissions, including, but not limited to, his violations of the above statutes and regulations, viewed individually and collectively, and considering the content and character of his violations, evince an indifference to others and an utter disregard of prudence amounting to a complete neglect of the safety of individuals traveling on the highways.

179.    The aforesaid negligent acts and omissions of Defendant Glover directly, foreseeably, and proximately caused personal injury to Mr. King and, resultingly, extreme and extended pre-death conscious pain and suffering, and ultimately death.[26]

180.    The damages suffered by Mr. King were the result of Defendant Glover's conduct which evinced his conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, including Mr. King, thereby entitling Plaintiff to punitive damages.[27]

181.    At all times relevant herein, Defendant Triple C had the right or power of direction and control of the manner of the work performed by Defendant Glover. Additionally, at all relevant times herein, Defendant Triple C controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendant Glover.

182.    Defendant Triple C knowingly employed or retained a careless and incompetent servant, Glover, and thereby impliedly authorized or ratified Glover's grossly negligent acts, committed in the course of his employment and/or agency, and because Glover's negligence was wanton and willful, the master (Triple C) is liable for exemplary or punitive damages.

183.    At all relevant times herein, Defendant Glover was the employee, agent, or servant of Defendant Triple C, acting within the scope of his employment, agency, and/or

---

[26] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).
[27] *See* W. Va. Code § 55-7-29.

contract with Triple C, thereby rendering Triple C vicariously liable for his grossly negligent actions and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

184.    At all relevant times herein, Defendant Wanger had the right or power of direction and control of the manner of the work performed by Defendants Triple C and Glover. Additionally, at all relevant times herein, Defendant Wagner controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Triple C and Glover.

185.    Defendant Wagner knowingly employed or retained careless and incompetent servants, Triple C and Glover, and thereby impliedly authorized or ratified Glover's and Triple C's grossly negligent acts, committed in the course of his employment and/or agency, and because Glover's negligence was wanton and willful, the master (Wagner) is liable for exemplary or punitive damages.

186.    At all relevant times herein, Defendant Triple C and its driver, Defendant Glover, were each the employee, agent, or servant of Defendant Wagner, acting within the scope of their employment, agency, and/or contract with Wagner, thereby rendering Wagner vicariously liable for their grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

187.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Glover was engaged in the carrying of loaded freight on public highways in a high-powered tractor-trailer, which may only be lawfully conducted under a franchise granted by public authority and is an activity presenting an unreasonable risk of harm to others.

Accordingly, as the owner of the public franchise under which Defendant Glover was operating, Defendant Wagner is liable for Defendant Glover's grossly negligent acts and omissions.[28]

188.    Regardless of the employment, principal-agent, or contractual relationship, Defendant Wagner was the owner of the USDOT # under which Defendant Glover was operating pursuant to its Lease with Defendant Triple C and is therefore presumptively responsible for the negligent acts of Defendant Triple C and its driver, Defendant Glover, by operation of law.[29]

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendants Glover, Wagner, and Triple C, jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for punitive damages in an amount a jury deems appropriate; (c) for costs incurred in connection with this suit; (d) for pre- and post-judgment interest as permitted by law; and (e) for such other and further relief as this Court deems appropriate.

**COUNT VII**
**Negligence**
**(Common Law)**
**Brought by Plaintiff Individually and on Behalf of B.K.,**
**<u>Against Defendant Wagner</u>**

189.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this direct negligence count, individually and on behalf of B.K., against Defendant Wagner for its negligent actions and omissions in causing their injuries and damages.

---

[28] *See Griffith v. George Transfer & Rigging*, 201 S.E.2d 281, 285-87 (W. Va. 1973).
[29] *See Edwards v. McElliotts Trucking, LLC*, 268 F. Supp. 3d 867, 877-79 (S.D. W. Va. 2017).

190.     At all relevant times herein, Defendant Wagner owed a duty to Plaintiff and B.K. to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that it knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

191.     Defendant Wagner breached these aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite its ability to do so, which would have yielded, *inter alia*, the following information:

   a.   Defendant Triple C's operating authority was revoked on April 10, 2019;

   b.   At the time it was hired, Defendant Triple C lacked valid insurance coverage;

   c.   Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

   d.   During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including, 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

   e.   The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

   f.   Defendant Triple C operated only one term-leased truck and trailer.

192.     Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Wagner should have foreseen the risks presented by Defendant Triple C's motor

carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on its behalf.

193.    At all relevant times herein, Defendant Wagner owed a duty to Plaintiff and B.K. to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

194.    Defendant Wagner breached this aforesaid duty, by *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load and failing to ensure the Load was transported safely.

195.    The aforesaid negligent acts and omissions of Defendant Wagner were a direct, foreseeable, and proximate cause of Plaintiff's damages, including, but not limited to, her conscious pain and suffering, physical impairment, past medical expenses of approximately $205,0000.00, mental anguish, emotional distress, lost wages, diminished earning capacity, annoyance and inconvenience, and loss of her capacity to enjoy life, all of which she has incurred and will in the future continue to incur.

196.    The aforesaid negligent acts and omissions of Defendant Wagner were a direct, foreseeable, and proximate cause of B.K.s' damages, including, but not limited to, his conscious pain and suffering, physical impairment, past medical expenses of approximately $42,000.00, mental anguish, emotional distress, diminished earning capacity, annoyance and inconvenience, and loss of his capacity to enjoy life, all of which he has incurred and will in the future continue to incur.

WHEREFORE, Plaintiff, individually and on behalf of her minor child, B.K., respectfully requests, for each, judgments against Defendant Wagner as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

**COUNT VIII**
**Wrongful Death – Negligence**
**(Pursuant to W. Va. Code §§ 55–7–5 *et seq.*)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**<u>Against Defendant Wagner</u>**

197.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this direct negligence count in her capacity as the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-7-5 et seq.*, against Defendant Wagner for its actions in causing Mr. King's death and the resultant damages to his statutory beneficiaries.

198.    At all relevant times herein, Defendant Wagner owed a duty to Mr. King to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that it knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

199.    Defendant Wagner breached these aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite its ability to do so, which would have yielded, *inter alia*, the following information:

a.  Defendant Triple C's operating authority was revoked on April 10, 2019;

b.  At the time it was hired, Defendant Triple C lacked valid insurance coverage;

c.  Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

d.  During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including, 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

e.  The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

f.  Defendant Triple C operated only one term-leased truck and trailer.

200.   Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Wagner should have foreseen the risks presented by Defendant Triple C's motor carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on its behalf.

201.   At all relevant times herein, Defendant Wagner owed a duty to Mr. King to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

202.   Defendant Wagner breached this aforesaid duty, by *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load and failing to ensure the Load was transported safely.

203.    The aforesaid negligent acts and omissions of Defendant Wagner directly, foreseeably, and proximately caused the death of Mr. King and, resultingly, various damages to his statutory beneficiaries, including, but not limited to, sorrow, mental anguish, and solace (including the loss of the society, companionship, comfort, guidance, kindly offices and advice of Mr. King), the loss the of income of Mr. King, the loss of the services, protection, care and assistance provided by Mr. King, the expenses associated with Mr. King's funeral, and the extreme and extended pre-death conscious pain and suffering of Mr. King.[30]

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendant Wagner as follows: (a) compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

**COUNT IX**
**Personal Injury Resulting in Death – Negligence**
**(Pursuant to W. Va. Code §§ 55–7–8)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**Against Defendant Wagner**

204.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this direct negligence count in her capacity as the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-7-5 et seq.*, against Defendant Wagner for its actions in causing Mr. King's personal injuries resulting in death.

---

[30] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D. W. Va. 2003).

205.    At all relevant times herein, Defendant Wagner owed a duty to Mr. King to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that it knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

206.    Defendant Wagner breached these aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite its ability to do so, which would have yielded, *inter alia*, the following information:

a.   Defendant Triple C's operating authority was revoked on April 10, 2019;

b.   At the time it was hired, Defendant Triple C lacked valid insurance coverage;

c.   Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

d.   During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including, 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

e.   The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

f.   Defendant Triple C operated only one term-leased truck and trailer.

207.    Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Wagner should have foreseen the risks presented by Defendant Triple C's motor

carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on its behalf.

208.     At all relevant times herein, Defendant Wagner owed a duty to Mr. King to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

209.     Defendant Wagner breached this aforesaid duty, by *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load and failing to ensure the Load was transported safely.

210.     The aforesaid negligent acts and omissions of Defendant Glover directly, foreseeably, and proximately caused personal injury to Mr. King and, resultingly, extreme and extended pre-death conscious pain and suffering, and ultimately death.[31]

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendant Wagner as follows: (a) compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

---

[31] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).

**COUNT X**
**Negligence and Vicarious Liability**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff Individually and on Behalf of B.K,**
**Against Defendant Specht**

211.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count individually, and on behalf of B.K., against Defendant Specht for his direct negligence in causing their injuries, and pursuant to his liability under theories of *respondeat superior*/vicarious liability and/or agency for the negligence of Defendants Wagner, Triple C, and Glover.

212.    At all relevant times herein, Defendant Specht owed a duty to Plaintiff and B.K. to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that he knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

213.    Defendant Specht breached these aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Wagner's motor carrier operating history, which would have yielded, *inter alia*, the following information:

    a.    In the three years preceding the collision, Defendant Wagner had been involved in **four separate collisions**, and one instance where a vehicle operating under its authority drove off the road. All of these events required the vehicles to be towed from the scene; and

    b.    Prior to the collision, inspections of Defendant Wagner's drivers and vehicles yielded evidence of violations, including, but not limited to, failing to obey a traffic control device, speeding violations, failing to obey applicable operating rules, operating a motor vehicle without a Commercial Driver's License, excessive weight violations, violations of seat belt usage, failures to properly secure cargo, failing to properly secure break tubing and hoses, failing to ensure emergency equipment was in place or making use of such equipment when and as

needed, operating a commercial vehicle without being medically certified as physically qualified to do so, failures to record duty status, failing to obey motor carrier responsibilities, driving beyond the 14-hour duty period, failing to maintain current driver duty status records, using a hand-held mobile telephone while operating a commercial motor vehicle, failing to have on board a commercial motor vehicle an information packet on the automatic on-board recording system, improper installations of brake tubing and hose connections, inoperative brake lamps, failures to inspect, repair, and/or maintain parts and accessories, a driver's license violation, failing to properly mark self-propelled commercial motor vehicles and intermodal equipment, failing to interrupt more than eight hours of driving time with a thirty-minute interruption in driving status, operating a commercial motor vehicle without an anti-lock brake system malfunction circuit or signal, failing to meet the automatic brake system requirements, operating with an inoperative turn signal, having a clamp or roto type brake out of adjustment, having inoperative or defective brakes, a state or international fuel tax violation, a state vehicle registration or license plate violation, using a radar detector in a commercial motor vehicle, and having an unsecured or no fire extinguisher.

214.    Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Specht should have foreseen the risks presented by Defendant Wagner's motor carrier operating history and should not have selected or allowed Defendant Wagner to transport the Load on his behalf.

215.    At all relevant times herein, Defendant Specht knew, or should have known, that Defendant Wagner tendered the Load to Defendant Triple C.

216.    Defendant Specht further breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite his ability to do so, which would have yielded, *inter alia*, the following information:

a.    Defendant Triple C's operating authority was revoked on April 10, 2019;

b.    At the time it was hired, Defendant Triple C lacked valid insurance coverage;

c.    Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed

violations of multiple FMCSA regulations, including 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

d.   During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

e.   The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

f.   Defendant Triple C operated only one term-leased truck and trailer.

217.   Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Specht should have foreseen the risks presented by Defendant Triple C's motor carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on his behalf.

218.   At all times relevant herein, Defendant Specht owed a duty to Plaintiff and B.K. to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

219.   Defendant Specht breached this aforesaid duty by, *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load, failing to ensure the individuals/entities he selected to perform a given role actually carried out said role, and/or failing to ensure the Load was transported safely.

220.   Defendant Specht owed a duty to Plaintiff and B.K. to obey all applicable statutes and regulations.

221.    Defendant Specht breached this duty through his violations of, *inter alia*, the following statutes and regulation: 49 U.S.C. § 13901, 49 U.S.C. § 13902, and 49 U.S.C. § 14916, and 49 C.F.R. § 371.7 (brokering the Load to Defendant Wagner under improper authority and misrepresenting his operations as being that of a carrier).

222.    The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Ms. Mitter and B.K.

223.    Defendant Specht's violations of the above statutes and regulations were a proximate cause of Ms. Mitter's, and B.K.'s injuries, thereby constituting *prima facie* evidence of his negligence.[32]

224.    The aforesaid negligent acts and omissions of Defendant Specht were a direct, foreseeable, and proximate cause of Plaintiff's damages, including, but not limited to, her conscious pain and suffering, physical impairment, past medical expenses of approximately $205,0000.00, mental anguish, emotional distress, lost wages, diminished earning capacity, annoyance and inconvenience, and loss of her capacity to enjoy life, all of which she has incurred and will in the future continue to incur.

225.    The aforesaid negligent acts and omissions of Defendant Specht were a direct, foreseeable, and proximate cause of B.K.s' damages, including, but not limited to, his conscious pain and suffering, physical impairment, past medical expenses of approximately $42,000.00, mental anguish, emotional distress, diminished earning capacity, annoyance and inconvenience, and loss of his capacity to enjoy life, all of which he has incurred and will in the future continue to incur.

---

[32] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

226.    At all times relevant herein, Defendant Specht had the right or power of direction and control of the manner of the work performed by Defendants Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant Specht controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Wagner, Triple C and Glover.

227.    At all times relevant herein, Defendants Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant Specht, and acting within the scope of their employment, agency, and/or contract with Defendant Specht, thereby rendering Defendant Specht vicariously liable for their negligent and/or grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency, in addition to Defendant Specht's liability for his direct negligence.

WHEREFORE, Plaintiff, individually and on behalf of her minor child, B.K., respectfully requests, for each, judgments against Defendant Specht  jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

### COUNT XI
**Wrongful Death – Negligence and Vicarious Liability**
**(Pursuant to W. Va. Code §§ 55–7–5 *et seq*.)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**<u>Against Defendant Specht</u>**

228.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-*

*7-5 et seq.*, against Defendant Specht for his direct negligence in causing Mr. King's death, and pursuant to his liability under theories of *respondeat superior*/vicarious liability and/or agency for the negligence of Defendants Wagner, Triple C, and Glover.

229.    At all relevant times herein, Defendant Specht owed a duty to Mr. King to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that he knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

230.    Defendant Specht breached these aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Wagner's motor carrier operating history, which would have yielded, *inter alia*, the following information:

    a.   In the three years preceding the collision, Defendant Wagner had been involved in **four separate collisions**, and one instance where a vehicle operating under it's authority drove off the road. All of these events required the vehicles to be towed from the scene; and

    b.   Prior to the collision, inspections of Defendant Wagner's drivers and vehicles yielded evidence of violations, including, but not limited to, failing to obey a traffic control device, speeding violations, failing to obey applicable operating rules, operating a motor vehicle without a Commercial Driver's License, excessive weight violations, violations of seat belt usage, failures to properly secure cargo, failing to properly secure break tubing and hoses, failing to ensure emergency equipment was in place or making use of such equipment when and as needed, operating a commercial vehicle without being medically certified as physically qualified to do so, failures to record duty status, failing to obey motor carrier responsibilities, driving beyond the 14-hour duty period, failing to maintain current driver duty status records, using a hand-held mobile telephone while operating a commercial motor vehicle, failing to have on board a commercial motor vehicle an information packet on the automatic on-board recording system, improper installations of brake tubing and hose connections, inoperative brake lamps, failures to inspect, repair, and/or maintain parts and accessories, a driver's license violation, failing to properly mark self-propelled commercial motor vehicles and intermodal equipment, failing to interrupt more

than eight hours of driving time with a thirty-minute interruption in driving status, operating a commercial motor vehicle without an anti-lock brake system malfunction circuit or signal, failing to meet the automatic brake system requirements, operating with an inoperative turn signal, having a clamp or roto type brake out of adjustment, having inoperative or defective brakes, a state or international fuel tax violation, a state vehicle registration or license plate violation, using a radar detector in a commercial motor vehicle, and having an unsecured or no fire extinguisher.

231.    Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Specht should have foreseen the risks presented by Defendant Wagner's motor carrier operating history and should not have selected or allowed Defendant Wagner to transport the Load on his behalf.

232.    At all relevant times herein, Defendant Specht knew, or should have known, that Defendant Wagner tendered the Load to Defendant Triple C.

233.    Defendant Specht further breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite his ability to do so, which would have yielded, *inter alia*, the following information:

a.  Defendant Triple C's operating authority was revoked on April 10, 2019;

b.  At the time it was hired, Defendant Triple C lacked valid insurance coverage;

c.  Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

d.  During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

e.  The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

f.   Defendant Triple C operated only one term-leased truck and trailer.

234.   Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Specht should have foreseen the risks presented by Defendant Triple C's motor carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on his behalf.

235.   At all times relevant herein, Defendant Specht owed a duty to Mr. King to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

236.   Defendant Specht breached this aforesaid duty by, *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load, failing to ensure the individuals/entities he selected to perform a given role actually carried out said role, and/or failing to ensure the Load was transported safely.

237.   Defendant Specht owed a duty to Mr. King to obey all applicable statutes and regulations.

238.   Defendant Specht breached this duty through his violations of, *inter alia*, the following statutes and regulations: 49 U.S.C. § 13901, 49 U.S.C. § 13902, and 49 U.S.C. § 14916, and 49 C.F.R. § 371.7 (brokering the Load to Defendant Wagner under improper authority and misrepresenting his operations as being that of a carrier).

239.   The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Mr. King.

240.    Defendant Specht's violations of the above statutes and regulations were a proximate cause of Mr. King's death and his statutory beneficiaries' damages, thereby constituting *prima facie* evidence of his negligence.[33]

241.    The aforesaid negligent acts and omissions of Defendant Specht directly, foreseeably, and proximately caused the death of Mr. King and, resultingly, various damages to his statutory beneficiaries, including, but not limited to, sorrow, mental anguish, and solace (including the loss of the society, companionship, comfort, guidance, kindly offices and advice of Mr. King), the loss the of income of Mr. King, the loss of the services, protection, care and assistance provided by Mr. King, the expenses associated with Mr. King's funeral, and the extreme and extended pre-death conscious pain and suffering of Mr. King.[34]

242.    At all times relevant herein, Defendant Specht had the right or power of direction and control of the manner of the work performed by Defendants Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant Specht controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Wagner, Triple C and Glover.

243.    At all times relevant herein, Defendants Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant Specht, and acting within the scope of their employment, agency, and/or contract with Defendant Specht, thereby rendering Defendant Specht vicariously liable for their negligent acts and omissions under principles of *respondeat*

---

[33] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).
[34] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D. W. Va. 2003).

*superior*/vicarious liability and/or agency, in addition to Defendant Specht's liability for his direct negligence.

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendant Specht jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

### COUNT XII
**Personal Injury Resulting in Death – Negligence and Vicarious Liability**
**(Pursuant to W. Va. Code §§ 55–7–8)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**<u>Against Defendant Specht</u>**

244.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal representative of the Estate of Mr. King of Mr. King's estate, pursuant to *W. Va. Code §§ 55-7-5 et seq*., against Defendant Specht for his direct negligence in causing Mr. King's death, and pursuant to his liability under theories of *respondeat superior*/vicarious liability and/or agency for the negligence of Defendants Wagner, Triple C, and Glover.

245.    At all relevant times herein, Defendant Specht owed a duty to Mr. King to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that he knew or

should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

246.   Defendant Specht breached these aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Wagner's motor carrier operating history, which would have yielded, *inter alia*, the following information:

a.   In the three years preceding the collision, Defendant Wagner had been involved in **four separate collisions**, and one instance where a vehicle operating under it's authority drove off the road. All of these events required the vehicles to be towed from the scene; and

b.   Prior to the collision, inspections of Defendant Wagner's drivers and vehicles yielded evidence of violations, including, but not limited to, failing to obey a traffic control device, speeding violations, failing to obey applicable operating rules, operating a motor vehicle without a Commercial Driver's License, excessive weight violations, violations of seat belt usage, failures to properly secure cargo, failing to properly secure break tubing and hoses, failing to ensure emergency equipment was in place or making use of such equipment when and as needed, operating a commercial vehicle without being medically certified as physically qualified to do so, failures to record duty status, failing to obey motor carrier responsibilities, driving beyond the 14-hour duty period, failing to maintain current driver duty status records, using a hand-held mobile telephone while operating a commercial motor vehicle, failing to have on board a commercial motor vehicle an information packet on the automatic on-board recording system, improper installations of brake tubing and hose connections, inoperative brake lamps, failures to inspect, repair, and/or maintain parts and accessories, a driver's license violation, failing to properly mark self-propelled commercial motor vehicles and intermodal equipment, failing to interrupt more than eight hours of driving time with a thirty-minute interruption in driving status, operating a commercial motor vehicle without an anti-lock brake system malfunction circuit or signal, failing to meet the automatic brake system requirements, operating with an inoperative turn signal, having a clamp or roto type brake out of adjustment, having inoperative or defective brakes, a state or international fuel tax violation, a state vehicle registration or license plate violation, using a radar detector in a commercial motor vehicle, and having an unsecured or no fire extinguisher.

247.   Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant Specht should have foreseen the risks presented by Defendant Wagner's motor carrier

operating history and should not have selected or allowed Defendant Wagner to transport the

Load on his behalf.

248. At all relevant times herein, Defendant Specht knew, or should have known, that

Defendant Wagner tendered the Load to Defendant Triple C.

249. Defendant Specht further breached the aforesaid duties by, *inter alia*, failing to

conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history,

despite his ability to do so, which would have yielded, *inter alia*, the following information:

    a.  Defendant Triple C's operating authority was revoked on April 10, 2019;

    b.  At the time it was hired, Defendant Triple C lacked valid insurance coverage;

    c.  Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of
       Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed
       violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23,
       393.9(a), and 396.3(a)(1);

    d.  During a safety audit on or about February 5, 2019, Defendant Triple C was
       determined to have failed to comply with multiple federally mandated regulations,
       including, 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a),
       382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

    e.  The 2000 Western Star tractor-trailer used to transport the load was previously
       involved in a collision on November 8, 2018, which resulted in the vehicle being
       towed from the scene; and

    f.  Defendant Triple C operated only one term-leased truck and trailer.

250. Based on the information readily available before the date of the collision that is

the subject of this complaint, including, but not limited to the information listed above,

Defendant Specht should have foreseen the risks presented by Defendant Triple C's motor

carrier operating history and should not have selected or allowed Defendant Triple C to transport

the Load on his behalf.

251.    At all times relevant herein, Defendant Specht owed a duty to Mr. King to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

252.    Defendant Specht breached this aforesaid duty by, *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load, failing to ensure the individuals/entities he selected to perform a given role actually carried out said role, and/or failing to ensure the Load was transported safely.

253.    Defendant Specht owed a duty to Mr. King to obey all applicable statutes and regulations.

254.    Defendant Specht breached this duty through his violations of, *inter alia*, the following statutes and regulations: 49 U.S.C. § 13901, 49 U.S.C. § 13902, and 49 U.S.C. § 14916, and 49 C.F.R. § 371.7 (brokering the Load to Defendant Wagner under improper authority and misrepresenting his operations as being that of a carrier).

255.    The statutes and regulations above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Mr. King.

256.    Defendant Specht's violations of the above statutes and regulations were a proximate cause of Mr. King's personal injuries resulting in death, thereby constituting *prima facie* evidence of his negligence.[35]

---

[35] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

257.    The aforesaid negligent acts and omissions of Defendant Specht directly, foreseeably, and proximately caused personal injury to Mr. King and, resultingly, extreme and extended pre-death conscious pain and suffering, and ultimately death.[36]

258.    At all times relevant herein, Defendant Specht had the right or power of direction and control of the manner of the work performed by Defendants Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant Specht controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Wagner, Triple C and Glover.

259.    At all times relevant herein, Defendants Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant Specht, and acting within the scope of their employment, agency, and/or contract with Defendant Specht, thereby rendering Defendant Specht vicariously liable for their negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency, in addition to Defendant Specht's liability for his direct negligence.

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendant Specht jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

---

[36] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).

## COUNT XIII
### Negligence and Vicarious Liability
### (Common Law and Under W. Va. Code Ann. § 55-7-9)
### Brought by Plaintiff Individually and on Behalf of B.K.,
### Against Defendant E.K. Bare

260.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count individually, and on behalf of B.K., against Defendant E.K. Bare for its direct negligence in causing their injuries, and pursuant to its liability under theories of *respondeat superior*/vicarious liability and/or agency for the negligence of Defendants Wagner, Triple C, Glover, and Specht.

261.    At all relevant times herein, Defendant E.K. Bare owed a duty to Plaintiff and B.K. to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that it knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

262.    At all relevant times herein, Defendant E.K. Bare knew, or should have known, that Defendant Specht re-brokered the Load to Defendant Wagner and that Defendant Wagner tendered the Load to Defendant Triple C.

263.    Defendant E.K. Bare breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Wagner's motor carrier operating history, which would have yielded, *inter alia*, the following information:

   a.  In the three years preceding the collision, Defendant Wagner had been involved in **four separate collisions**, and one instance where a vehicle operating under it's authority drove off the road. All of these events required the vehicles to be towed from the scene; and

b. Prior to the collision, inspections of Defendant Wagner's drivers and vehicles yielded evidence of violations, including, but not limited to, failing to obey a traffic control device, speeding violations, failing to obey applicable operating rules, operating a motor vehicle without a Commercial Driver's License, excessive weight violations, violations of seat belt usage, failures to properly secure cargo, failing to properly secure break tubing and hoses, failing to ensure emergency equipment was in place or making use of such equipment when and as needed, operating a commercial vehicle without being medically certified as physically qualified to do so, failures to record duty status, failing to obey motor carrier responsibilities, driving beyond the 14-hour duty period, failing to maintain current driver duty status records, using a hand-held mobile telephone while operating a commercial motor vehicle, failing to have on board a commercial motor vehicle an information packet on the automatic on-board recording system, improper installations of brake tubing and hose connections, inoperative brake lamps, failures to inspect, repair, and/or maintain parts and accessories, a driver's license violation, failing to properly mark self-propelled commercial motor vehicles and intermodal equipment, failing to interrupt more than eight hours of driving time with a thirty-minute interruption in driving status, operating a commercial motor vehicle without an anti-lock brake system malfunction circuit or signal, failing to meet the automatic brake system requirements, operating with an inoperative turn signal, having a clamp or roto type brake out of adjustment, having inoperative or defective brakes, a state or international fuel tax violation, a state vehicle registration or license plate violation, using a radar detector in a commercial motor vehicle, and having an unsecured or no fire extinguisher.

264. Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant E.K. Bare should have foreseen the risks presented by Defendant Wagner's motor carrier operating history and should not have selected or allowed Defendant Wagner to transport the Load on its behalf.

265. Defendant E.K. Bare further breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite its ability to do so, which would have yielded, *inter alia*, the following information:

a. Defendant Triple C's operating authority was revoked on April 10, 2019;

b. At the time it was hired, Defendant Triple C lacked valid insurance coverage;

72

     c.    Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

     d.    During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

     e.    The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

     f.    Defendant Triple C operated only one term-leased truck and trailer.

266.    Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant E.K. Bare should have foreseen the risks presented by Defendant Triple C's motor carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on its behalf.

267.    At all times relevant herein, Defendant E.K. Bare owed a duty to Plaintiff and B.K. to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

268.    Defendant E.K. Bare breached this aforesaid duty by, *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load, failing to ensure the individuals/entities it selected to perform a given role actually carried out said role, and/or failing to ensure the Load was transported safely.

269.    Defendant E.K. Bare owed a duty to Plaintiff and B.K. to obey all applicable statutes and regulations.

270.    Defendant E.K. Bare breached this duty through his violations of, *inter alia*, 49 U.S.C. § 13901 and 49 U.S.C. § 14916 (brokering the Load to Defendant Specht without broker authority).

271.    The statutes above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Plaintiff and B.K.

272.    Defendant E.K. Bare's violation of the above statutes were a proximate cause of Ms. Mitter's, and B.K.'s injuries, thereby constituting *prima facie* evidence of negligence against it.[37]

273.    The aforesaid negligent acts and omissions of Defendant E.K. Bare were a direct, foreseeable, and proximate cause of Plaintiff's damages, including, but not limited to, her conscious pain and suffering, physical impairment, past medical expenses of approximately $205,0000.00, mental anguish, emotional distress, lost wages, diminished earning capacity, annoyance and inconvenience, and loss of her capacity to enjoy life, all of which she has incurred and will in the future continue to incur.

274.    The aforesaid negligent acts and omissions of Defendant E.K. Bare were a direct, foreseeable, and proximate cause of B.K.s' damages, including, but not limited to, his conscious pain and suffering, physical impairment, past medical expenses of approximately $42,000.00, mental anguish, emotional distress, diminished earning capacity, annoyance and inconvenience, and loss of his capacity to enjoy life, all of which he has incurred and will in the future continue to incur.

---

[37] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).

275.    At all times relevant herein, Defendant E.K. Bare had the right or power of direction and control of the manner of the work performed by Defendants Specht, Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant E.K. Bare controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Specht, Wagner, Triple C and Glover.

276.    At all times relevant herein, Defendants Specht, Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant E.K. Bare, and acting within the scope of their employment, agency, and/or contract with Defendant E.K. Bare, thereby rendering Defendant E.K. Bare vicariously liable for their negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

WHEREFORE, Plaintiff, individually and on behalf of her minor child, B.K., respectfully requests, for each, judgments against Defendant E.K. Bare jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

### COUNT XIV
**Wrongful Death – Negligence and Vicarious Liability**
**(Pursuant to W. Va. Code §§ 55–7–5 *et seq*.)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**<u>Against Defendant E.K. Bare</u>**

277.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal representative of the Estate of Mr. King pursuant to *W. Va. Code §§ 55-7-5 et seq*., against Defendant E.K. Bare for its direct negligence in causing Mr. King's death,

and pursuant to its liability under theories of *respondeat superior*/vicarious liability and/or agency for the negligence of Defendants Wagner, Triple C, Glover, and Specht.

278.    At all relevant times herein, Defendant E.K. Bare owed a duty to Mr. King to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that it knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

279.    At all relevant times herein, Defendant E.K. Bare knew, or should have known, that Defendant Specht re-brokered the Load to Defendant Wagner and Defendant Wagner tendered the Load to Defendant Triple C.

280.    Defendant E.K. Bare breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Wagner's motor carrier operating history, which would have yielded, *inter alia*, the following information:

    a.  In the three years preceding the collision, Defendant Wagner had been involved in **four separate collisions**, and one instance where a vehicle operating under it's authority drove off the road. All of these events required the vehicles to be towed from the scene; and

    b.  Prior to the collision, inspections of Defendant Wagner's drivers and vehicles yielded evidence of violations, including, but not limited to, failing to obey a traffic control device, speeding violations, failing to obey applicable operating rules, operating a motor vehicle without a Commercial Driver's License, excessive weight violations, violations of seat belt usage, failures to properly secure cargo, failing to properly secure break tubing and hoses, failing to ensure emergency equipment was in place or making use of such equipment when and as needed, operating a commercial vehicle without being medically certified as physically qualified to do so, failures to record duty status, failing to obey motor carrier responsibilities, driving beyond the 14-hour duty period, failing to maintain current driver duty status records, using a hand-held mobile telephone while operating a commercial motor vehicle, failing to have on board a commercial motor vehicle an information packet on the automatic on-board

recording system, improper installations of brake tubing and hose connections, inoperative brake lamps, failures to inspect, repair, and/or maintain parts and accessories, a driver's license violation, failing to properly mark self-propelled commercial motor vehicles and intermodal equipment, failing to interrupt more than eight hours of driving time with a thirty-minute interruption in driving status, operating a commercial motor vehicle without an anti-lock brake system malfunction circuit or signal, failing to meet the automatic brake system requirements, operating with an inoperative turn signal, having a clamp or roto type brake out of adjustment, having inoperative or defective brakes, a state or international fuel tax violation, a state vehicle registration or license plate violation, using a radar detector in a commercial motor vehicle, and having an unsecured or no fire extinguisher.

281.     Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant E.K. Bare should have foreseen the risks presented by Defendant Wagner's motor carrier operating history and should not have selected or allowed Defendant Wagner to transport the Load on its behalf.

282.     Defendant E.K. Bare further breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite its ability to do so, which would have yielded, *inter alia*, the following information:

  a. Defendant Triple C's operating authority was revoked on April 10, 2019;

  b. At the time it was hired, Defendant Triple C lacked valid insurance coverage;

  c. Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

  d. During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

  e. The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

f.   Defendant Triple C operated only one term-leased truck and trailer.

283.   Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant E.K. Bare should have foreseen the risks presented by Defendant Triple C's motor carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on its behalf.

284.   At all times relevant herein, Defendant E.K. Bare owed a duty to Mr. King to supervise the safe transportation of the Load, including, but not limited to, by having mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

285.   Defendant E.K. Bare breached this aforesaid duty by, *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load, failing to ensure the individuals/entities it selected to perform a given role actually carried out said role, and/or failing to ensure the Load was transported safely.

286.   Defendant E.K. Bare owed a duty to Mr. King to obey all applicable statutes and regulations.

287.   Defendant E.K. Bare breached this duty through his violations of, *inter alia*, 49 U.S.C. § 13901 and 49 U.S.C. § 14916 (brokering the Load to Defendant Specht without broker authority).

288.   The statutes above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Mr. King.

289.     Defendant E.K. Bare's violations of the above statutes were a proximate cause of Mr. King's death and his statutory beneficiaries' damages, thereby constituting *prima facie* evidence of negligence against it.[38]

290.     The aforesaid negligent acts and omissions of Defendant E.K. Bare directly, foreseeably, and proximately caused the death of Mr. King and, resultingly, various damages to his statutory beneficiaries, including, but not limited to, sorrow, mental anguish, and solace (including the loss of the society, companionship, comfort, guidance, kindly offices and advice of Mr. King), the loss the of income of Mr. King, the loss of the services, protection, care and assistance provided by Mr. King, the expenses associated with Mr. King's funeral, and the extreme and extended pre-death conscious pain and suffering of Mr. King.[39]

291.     At all times relevant herein, Defendant E.K. Bare had the right or power of direction and control of the manner of the work performed by Defendants Specht, Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant E.K. Bare controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Specht, Wagner, Triple C and Glover.

292.     At all times relevant herein, Defendants Specht, Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant E.K. Bare, and acting within the scope of their employment, agency, and/or contract with Defendant E.K. Bare, thereby rendering Defendant E.K. Bare vicariously liable for their negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

---

[38] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).
[39] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D. W. Va. 2003).

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendant E.K. Bare jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

**COUNT XV**
**Personal Injury Resulting in Death – Negligence and Vicarious Liability**
**(Pursuant to W. Va. Code §§ 55–7–8)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**Against Defendant E.K. Bare**

293.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal Representative of Mr. King's estate, pursuant to *W. Va. Code §§ 55-7-5 et seq*., against Defendant E.K. Bare for its direct negligence in causing Mr. King's death, and pursuant to its liability under theories of *respondeat superior*/vicarious liability and/or agency for the negligence of Defendants Wagner, Triple C, Glover, and Specht.

294.    At all relevant times herein, Defendant E.K. Bare owed a duty to Mr. King to exercise reasonable diligence and care in selecting or allowing competent and careful individuals/entities to transport the Load, investigating the fitness of the individuals/entities involved in such an enterprise, and not hiring or retaining any individual/entity that it knew or should have known posed a risk of harm to others or which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

295.     At all relevant times herein, Defendant E.K. Bare knew, or should have known, that Defendant Specht re-brokered the Load to Defendant Wagner and Defendant Wagner tendered the Load to Defendant Triple C.

296.     Defendant E.K. Bare breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Wagner's motor carrier operating history, which would have yielded, *inter alia*, the following information:

a.  In the three years preceding the collision, Defendant Wagner had been involved in **four separate collisions**, and one instance where a vehicle operating under it's authority drove off the road. All of these events required the vehicles to be towed from the scene; and

b.  Prior to the collision, inspections of Defendant Wagner's drivers and vehicles yielded evidence of violations, including, but not limited to, failing to obey a traffic control device, speeding violations, failing to obey applicable operating rules, operating a motor vehicle without a Commercial Driver's License, excessive weight violations, violations of seat belt usage, failures to properly secure cargo, failing to properly secure break tubing and hoses, failing to ensure emergency equipment was in place or making use of such equipment when and as needed, operating a commercial vehicle without being medically certified as physically qualified to do so, failures to record duty status, failing to obey motor carrier responsibilities, driving beyond the 14-hour duty period, failing to maintain current driver duty status records, using a hand-held mobile telephone while operating a commercial motor vehicle, failing to have on board a commercial motor vehicle an information packet on the automatic on-board recording system, improper installations of brake tubing and hose connections, inoperative brake lamps, failures to inspect, repair, and/or maintain parts and accessories, a driver's license violation, failing to properly mark self-propelled commercial motor vehicles and intermodal equipment, failing to interrupt more than eight hours of driving time with a thirty-minute interruption in driving status, operating a commercial motor vehicle without an anti-lock brake system malfunction circuit or signal, failing to meet the automatic brake system requirements, operating with an inoperative turn signal, having a clamp or roto type brake out of adjustment, having inoperative or defective brakes, a state or international fuel tax violation, a state vehicle registration or license plate violation, using a radar detector in a commercial motor vehicle, and having an unsecured or no fire extinguisher.

297.     Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above,

Defendant E.K. Bare should have foreseen the risks presented by Defendant Wagner's motor carrier operating history and should not have selected or allowed Defendant Wagner to transport the Load on its behalf.

298.   Defendant E.K. Bare further breached the aforesaid duties by, *inter alia*, failing to conduct a reasonably diligent search of Defendant Triple C's motor carrier operating history, despite its ability to do so, which would have yielded, *inter alia*, the following information:

    a.   Defendant Triple C's operating authority was revoked on April 10, 2019;

    b.   At the time it was hired, Defendant Triple C lacked valid insurance coverage;

    c.   Prior to transporting the Load, inspections on 1/22/2019 and 10/9/2018 of Defendant Triple C's 2000 Western Star tractor-trailer and driver(s) revealed violations of multiple FMCSA regulations, including, 49 C.F.R. §§ 393.23, 393.9(a), and 396.3(a)(1);

    d.   During a safety audit on or about February 5, 2019, Defendant Triple C was determined to have failed to comply with multiple federally mandated regulations, including 49 C.F.R. §§ 390.15(b)(1), 391.51(b)(1), 391.51(b)(2), 391.53(a), 382.301(a), 382.303(a), 382.303(b), 382.305(b)(1), 382.603, and 395.8(a);

    e.   The 2000 Western Star tractor-trailer used to transport the load was previously involved in a collision on November 8, 2018, which resulted in the vehicle being towed from the scene; and

    f.   Defendant Triple C operated only one term-leased truck and trailer.

299.   Based on the information readily available before the date of the collision that is the subject of this complaint, including, but not limited to the information listed above, Defendant E.K. Bare should have foreseen the risks presented by Defendant Triple C's motor carrier operating history and should not have selected or allowed Defendant Triple C to transport the Load on its behalf.

300.   At all times relevant herein, Defendant E.K. Bare owed a duty to Mr. King to supervise the safe transportation of the Load, including, but not limited to, by having

mechanisms in place to monitor the individuals/entities involved in the transportation of the Load and the manner of their involvement, and for confirming that said individuals were safely carrying out their directives.

301.    Defendant E.K. Bare breached this aforesaid duty by, *inter alia*, failing to monitor the individuals/entities involved in the transportation of the Load, failing to ensure the individuals/entities it selected to perform a given role actually carried out said role, and/or failing to ensure the Load was transported safely.

302.    Defendant E.K. Bare owed a duty to Mr. King to obey all applicable statutes and regulations.

303.    Defendant E.K. Bare breached this duty through his violations of, *inter alia*, 49 U.S.C. § 13901 and 49 U.S.C. § 14916 (brokering the Load to Defendant Specht without broker authority).

304.    The statutes above were enacted to prevent the kind of harm caused by the collision and to protect persons such as Mr. King.

305.    Defendant E.K. Bare's violations of the above statutes and regulations were a proximate cause of Mr. King's personal injuries resulting in death, thereby constituting *prima facie* evidence of its negligence.[40]

306.    The aforesaid negligent acts and omissions of Defendant E.K. Bare directly, foreseeably, and proximately caused personal injury to Mr. King and, resultingly, extreme and extended pre-death conscious pain and suffering, and ultimately death.[41]

---

[40] *See* W. Va. Code § 55-7-9; *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991).
[41] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).

307.    At all times relevant herein, Defendant E.K. Bare had the right or power of direction and control of the manner of the work performed by Defendants Specht, Wagner, Triple C and Glover. Additionally, at all relevant times herein, Defendant E.K. Bare controlled, *inter alia*, the selection and engagement of, the payment of compensation to, and/or the power of dismissal over, Defendants Specht, Wagner, Triple C and Glover.

308.    At all times relevant herein, Defendants Specht, Wagner, Triple C, and Glover were each the employee, agent, or servant of Defendant E.K. Bare, and acting within the scope of their employment, agency, and/or contract with Defendant E.K. Bare, thereby rendering Defendant E.K. Bare vicariously liable for their negligent and/or grossly negligent acts and omissions under principles of *respondeat superior*/vicarious liability and/or agency.

WHEREFORE, Plaintiff, as personal representative of the Estate of Mr. King, respectfully requests judgment against Defendant E.K. Bare jointly, and/or jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

## COUNT XVI
### Unlawful Brokerage Activities
### (Violation of 49 U.S.C. § 14916)
### Brought by Plaintiff Individually and on Behalf of B.K.,
###  Against all Defendants

309.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count individually and on behalf of B.K., against all Defendants for their unlawful brokerage activities, in violation of 49

U.S.C. § 14916(a), for which they are all jointly and severally liable, pursuant to 49 U.S.C. § 14916(d).

310.    At all times relevant herein, 49 U.S.C. § 14916(a) stated that a person may provide interstate brokerage services as a broker only if that person (1) was registered under, and in compliance with, section 13904; and (2) had satisfied the financial security requirements under section 13906.

311.    In violation 49 U.S.C. § 14916(a) Defendants knowingly authorized, consented to, or permitted, directly or indirectly, either alone or in conjunction with any other person, a violation and/or violations of 49 U.S.C. § 14916(a), rendering them liable to Plaintiff and B.K. for all valid claims incurred without regard to amount, pursuant to 49 U.S.C. § 14916(c).

312.    Defendants' violations of 49 U.S.C. § 14916(a) render Defendants as the corporate entities and partnerships, and/or the individual officers, directors, or principals of such entities, involved in the violations jointly and severally liable for Plaintiff and B.K.'s claims, pursuant to 49 U.S.C. § 14916(d).

313.    Defendants' aforesaid violations of 49 U.S.C. § 14916(a) were a direct, foreseeable, and proximate cause of Plaintiff's damages, including, but not limited to, her conscious pain and suffering, physical impairment, past medical expenses of approximately $205,0000.00, mental anguish, emotional distress, lost wages, diminished earning capacity, annoyance and inconvenience, and loss of her capacity to enjoy life, all of which she has incurred and will in the future continue to incur.

314.    Defendants' aforesaid violations of 49 U.S.C. § 14916(a) were a direct, foreseeable, and proximate cause of B.K.s' damages, including, but not limited to, his conscious pain and suffering, physical impairment, past medical expenses of approximately $42,000.00,

mental anguish, emotional distress, diminished earning capacity, annoyance and inconvenience, and loss of his capacity to enjoy life, all of which he has incurred and will in the future continue to incur.

WHEREFORE, Plaintiff, individually and on behalf of her minor child, B.K., respectfully requests, for each, pursuant to 49 U.S.C. § 14916(d), judgments against all Defendants, jointly and severally, as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

**COUNT XVII**
**Wrongful Death – Unlawful Brokerage Activities**
**(Pursuant to W. Va. Code §§ 55-7-5 *et. seq.*)**
**(Violation of 49 U.S.C. § 14916)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**<u>Against All Defendants</u>**

315.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this in her capacity as the duly appointed Personal Representative of the Estate of Mr. King, pursuant to *W. Va. Code* 55-7-5 *et. seq.*, against all Defendants for their unlawful brokerage activities, in violation of 49 U.S.C. § 14916(a), for which they are all jointly and severally liable, pursuant to 49 U.S.C. § 14916(d).

316.    At all times relevant herein, 49 U.S.C. § 14916(a) stated that a person may provide interstate brokerage services as a broker only if that person (1) was registered under, and in compliance with, section 13904; and (2) had satisfied the financial security requirements under section 13906.

317.    In violation 49 U.S.C. § 14916(a) Defendants knowingly authorized, consented to, or permitted, directly or indirectly, either alone or in conjunction with any other person, a

violation and/or violations of 49 U.S.C. § 14916(a), rendering them liable to Mr. King's statutory beneficiaries for all valid claims incurred without regard to amount, pursuant to 49 U.S.C. § 14916(c).

318.    Defendants' violations of 49 U.S.C. § 14916(a) render Defendants as the corporate entities and/or partnerships, and/or the individual officers, directors, or principals of such entities, involved in the violations jointly and severally liable for Mr. King's statutory beneficiaries' claims, pursuant to 49 U.S.C. § 14916(d).

319.    Defendants' aforesaid violations of 49 U.S.C. § 14916(a) directly, foreseeably, and proximately caused the death of Mr. King and, resultingly, various damages to his statutory beneficiaries, including, but not limited to, sorrow, mental anguish, and solace (including the loss of the society, companionship, comfort, guidance, kindly offices and advice of Mr. King), the loss the of income of Mr. King, the loss of the services, protection, care and assistance provided by Mr. King, the expenses associated with Mr. King's funeral, and the extreme and extended pre-death conscious pain and suffering of Mr. King.[42]

WHEREFORE, Plaintiff, as Personal Representative of the Estate of Mr. King, and pursuant to 49 U.S.C. § 14916(d), respectfully requests judgments against all Defendants, jointly and severally, as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

---

[42] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D. W. Va. 2003).

### COUNT XVIII
### Personal Injury Resulting in Death – Unlawful Brokerage Activities
### (Pursuant to W. Va. Code §§ 55-7-8)
### (Violation of 49 U.S.C. § 14916)
### Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,
### Against all Defendants

320.    All allegations and causes of action in this Complaint, pled above and below, are

incorporated into this cause of action by reference. Plaintiff brings this in her capacity as the duly

appointed Personal Representative of the Estate of Mr. King, pursuant to *W. Va. Code* 55-7-5 *et.*

*seq.*, against all Defendants for their unlawful brokerage activities, in violation of 49 U.S.C. §

14916(a), for which they are all jointly and severally liable, pursuant to 49 U.S.C. § 14916(d).

321.    At all times relevant herein, 49 U.S.C. § 14916(a) stated that a person may

provide interstate brokerage services as a broker only if that person (1) was registered under, and

in compliance with, section 13904; and (2) had satisfied the financial security requirements

under section 13906.

322.    In violation 49 U.S.C. § 14916(a) Defendants knowingly authorized, consented

to, or permitted, directly or indirectly, either alone or in conjunction with any other person, a

violation and/or violations of 49 U.S.C. § 14916(a), rendering them liable to Mr. King for all

valid claims incurred without regard to amount, pursuant to 49 U.S.C. § 14916(c).

323.    Defendants' violations of 49 U.S.C. § 14916(a) render Defendants as the

corporate entities and/or partnerships, and/or the individual officers, directors, or principals of

such entities, involved in the violations jointly and severally liable for Mr. King's claims,

pursuant to 49 U.S.C. § 14916(d).

324.    Defendants' aforesaid violations of 49 U.S.C. § 14916(a) directly, foreseeably, and proximately caused personal injury to Mr. King and, resultingly, extreme and extended pre-death conscious pain and suffering, and ultimately death.[43]

WHEREFORE, Plaintiff, as Personal Representative of the Estate of Mr. King, and pursuant to 49 U.S.C. § 14916(d), respectfully requests judgments against all Defendants, jointly and severally, as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

## COUNT XIX
### Negligence and Joint Venture Liability
### (Common Law and Under W. Va. Code § 55-7-9)
### Brought by Plaintiff Individually and on behalf of B.K.,
### Against Defendants Triple C, Wagner, E.K. Bare, and Specht

325.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count individually, and on behalf of B.K., against Defendants Triple C, Wagner, E.K. Bare and Specht (collectively, the "Joint Venture Defendants"), under a joint venture theory of liability for the negligent acts and/or omissions of all Defendants.

326.    At all times relevant herein, the Joint Venture Defendants were engaged in a joint venture: an association of two or more persons to carry out a single business enterprise for profit, namely, the transportation of the Load, for which purposes they combined their property, money, effects, skill and/or knowledge.

---

[43] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).

327.    The Joint Venture Defendants' joint venture arose out of a contractual relationship between the parties which was oral or written, express or implied.

328.    As a result of their joint venture, the Joint Venture Defendants are jointly and severally liable for all obligations pertaining to the venture and the actions of the joint venture bound the individual co-venturers.

329.    As a direct, proximate, and foreseeable result of the negligent acts and/or omissions of all the Joint Venture Defendants, as articulated in the counts above and below and fully incorporated herein, Plaintiff suffered damages, including, but not limited to, her conscious pain and suffering, physical impairment, past medical expenses of approximately $205,0000.00, mental anguish, emotional distress, lost wages, diminished earning capacity, annoyance and inconvenience, and loss of her capacity to enjoy life, all of which she has incurred and will in the future continue to incur.

330.    As a direct, proximate, and foreseeable result of the negligent acts and/or omissions of all the Joint Venture Defendants, as articulated in the counts above and below and fully incorporated herein, B.K. suffered damages, including, but not limited to, his conscious pain and suffering, physical impairment, past medical expenses of approximately $42,000.00, mental anguish, emotional distress, diminished earning capacity, annoyance and inconvenience, and loss of his capacity to enjoy life, all of which he has incurred and will in the future continue to incur.

WHEREFORE, Plaintiff, individually and on behalf of her minor child, B.K., respectfully requests, for each, judgments against the Joint Venture Defendants, jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in

connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

**COUNT XX**
**Wrongful Death – Joint Venture Liability**
**(Pursuant to W. Va. Code §§ 55-7-5 *et. seq.*)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**<u>Against Defendants Triple C, Wagner, E.K. Bare and Specht</u>**

331.    All allegations and causes of action in this Complaint, pled above and below, are incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as the duly appointed Personal Representative of the Estate of Mr. King, pursuant to *W. Va. Code* 55-7-5 *et. seq.*, against Defendants Triple C, Wagner, E.K. Bare and Specht (collectively, the "Joint Venture Defendants"), under a joint venture theory of liability for the negligent acts and/or omissions of all Defendants.

332.    At all times relevant herein, the Joint Venture Defendants were engaged in a joint venture: an association of two or more persons to carry out a single business enterprise for profit, namely, the transportation of the Load, for which purposes they combined their property, money, effects, skill and/or knowledge.

333.    The Joint Venture Defendants' joint venture arose out of a contractual relationship between the parties which was oral or written, express or implied.

334.    As a result of their joint venture, the Joint Venture Defendants are jointly and severally liable for all obligations pertaining to the venture and the actions of the joint venture bound the individual co-venturers.

335.    The negligent acts and/or omissions of the Joint Venture Defendants, as articulated in the counts above and below and fully incorporated herein, directly, foreseeably, and proximately caused the death of Mr. King and, resultingly, various damages to his statutory

beneficiaries, including, but not limited to, sorrow, mental anguish, and solace (including the loss

of the society, companionship, comfort, guidance, kindly offices and advice of Mr. King), the

loss the of income of Mr. King, the loss of the services, protection, care and assistance provided

by Mr. King, the expenses associated with Mr. King's funeral, and the extreme and extended

pre-death conscious pain and suffering of Mr. King.[44]

WHEREFORE, Plaintiff, as Personal Representative of the Estate of Mr. King,

respectfully requests, judgments against the Joint Venture Defendants, jointly and severally

pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory damages in an amount

to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection

with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other

and further relief as this Court deems appropriate.

### COUNT XXI
**Personal Injury Resulting in Death – Joint Venture Liability**
**(Pursuant to W. Va. Code §§ 55-7-8)**
**(Common Law and Under W. Va. Code § 55-7-9)**
**Brought by Plaintiff, as Personal Representative of the Estate of Mr. King,**
**Against Defendants Triple C, Wagner, E.K. Bare and Specht**

336.    All allegations and causes of action in this Complaint, pled above and below, are

incorporated into this cause of action by reference. Plaintiff brings this count in her capacity as

the duly appointed Personal Representative of the Estate of Mr. King, pursuant to *W. Va. Code*

55-7-5 *et. seq.*, against Defendants Triple C, Wagner, E.K. Bare and Specht (collectively, the

"Joint Venture Defendants") under a joint venture theory of liability for the negligent acts and/or

omissions of all Defendants.

---

[44] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D. W. Va. 2003).

337.    At all times relevant herein, the Joint Venture Defendants were engaged in a joint venture: an association of two or more persons to carry out a single business enterprise for profit, namely, the transportation of the Load, for which purposes they combined their property, money, effects, skill and/or knowledge.

338.    The Joint Venture Defendants' joint venture arose out of a contractual relationship between the parties which was oral or written, express or implied.

339.    As a result of their joint venture, the Joint Venture Defendants are jointly and severally liable for all obligations pertaining to the venture and the actions of the joint venture bound the individual co-venturers.

340.    The negligent acts and/or omissions of the Joint Venture Defendants, as articulated in the counts above and below and fully incorporated herein, directly, foreseeably, and proximately caused personal injury to Mr. King and, resultingly, extreme and extended pre-death conscious pain and suffering, and ultimately death.[45]

WHEREFORE, Plaintiff, as Personal Representative of the Estate of Mr. King, respectfully requests, judgments against the Joint Venture Defendants, jointly and severally pursuant to W. Va. Code § 55-7-13d(b), as follows: (a) for compensatory damages in an amount to be determined and proven at trial, in excess of $75,000.00; (b) for costs incurred in connection with this suit; (c) for pre- and post-judgment interest as permitted by law; and (d) for such other and further relief as this Court deems appropriate.

---

[45] *See McDavid v. United States*, 584 S.E.2d 226, 238 (W. Va. 2003); *see also McDavid v. United States*, 292 F. Supp.2d 871 (S.D.W. Va. 2003).

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.


Respectfully submitted,


ELISABETH MITTER

By:

    ***/s/ Stephen G. Skinner***
_____
Stephen Skinner, Esquire
WVSB #6725
Skinner Law Firm
115 E Washington St.
Charles Town, WV 25414
Phone: 304-459-2814
sskinner@skinnerfirm.com
*Counsel for Plaintiff*

    -and-


_____
Peter C. Grenier, Esq. (*Visiting Attorney application to be filed*)
GRENIER LAW GROUP PLLC
1920 L St N.W., Suite 750
Washington, DC 20036
Phone: 202-768-9600
Fax: 202-768-9604
pgrenier@grenierlawgroup.com
*Counsel for Plaintiff*

    -and-

 

_____
Kenneth J. LaDuca, Esq. (*Visiting Attorney application to be filed*)
GRENIER LAW GROUP PLLC
1920 L St N.W., Suite 750
Washington, DC 20036
Phone: 202-768-9600
Fax: 202-768-9604
kladuca@grenierlawgroup.com
*Counsel for Plaintiff*